UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____/

**JANE DOE**, in her individual capacity,

        Plaintiff,

        -against-

**BARD COLLEGE and BARD COLLEGE
BOARD OF TRUSTEES** and **JOHN DOE**,
an individual,

        Defendants.
_____/

INDEX NO.
**COMPLAINT WITH
JURY DEMAND**

        Plaintiff **JANE DOE** ("**JANE DOE**"), proceeding individually, and by pseudonym, hereby files this Complaint by and through the undersigned counsel against the above-named Defendants **BARD COLLEGE and BARD COLLEGE BOARD OF TRUSTEES** (hereinafter referred to as "**BARD**"), and then BARD student, Defendant JOHN DOE ("JOHN DOE"), for causing injuries and damages arising out of the sexual assault and battery of Plaintiff **JANE DOE**, on September 25, 2015, for which Plaintiff now seeks damages, and in support thereof alleges as follows:

## PRELMINARY STATEMENT

1.      This is a case about a rape victim not being taken seriously by Defendant BARD.

2.      Plaintiff, JANE DOE, a then-eighteen year-old disabled African-American woman with was stalked and raped by a peer, Defendant JOHN DOE, a nineteen-year-old white man, on campus at Defendant BARD in September 2015.

3.      After reporting the sexual assault to the Title IX office, Defendant BARD decided neither to investigate the matter or approve Plaintiff JANE DOE's pleas for a No Contact order. Even after a second woman, also a racial minority came forward against the same offender, there was still no investigation or No Contact order.  Finally, a third victim reported it, this time a white woman.  After eight months of misery, fear, and terror, the offenses of this man were investigated and all three women were issued No Contact orders.

4.      Plaintiff JANE DOE was racially discriminated against, sexually harassed, assaulted, battered and stalked by Defendant JOHN DOE, a White male Defendant BARD College student.  As such, Plaintiff JANE DOE pursues damages against Defendant JOHN DOE for sexual battery and Defendant BARD for denying her protection under Title IX, Title VI, Section 504 of the Rehabilitation Clause, and the ADA, among the other enumerated legal claims below, and for ultimately retaliating against her when she sought to enforce her federally protected rights.

## VENUE, JURISDICTION, AND PARTIES

5.      This action is brought for unlawful discrimination based on gender and/or sex, for sexual battery and sexual harassment in the educational context, and for the creation of a hostile educational environment by Defendant BARD, pursuant to Title IX of the 1972 Education Amendment (20 U.S.C. § 1861), which prohibits discrimination based on sex under any educational program receiving federal financial assistance.  This action is also brought pursuant to: Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000; for a violation of §504 of the Rehabilitation Act ("Section 504"); and the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101; and violations of New York State laws. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

6.      This Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367, because the claims that arise under the laws of New York are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8.      Defendant BARD College is an educational institution which, at all times material hereto, was organized and existing under the laws of the State of New York, and operating and conducting business in Annandale-on Hudson, Dutchess County, New York.  Upon information and belief, Bard College operates under a Board of Trustees, namely, the Bard College Board of Trustees.  Defendant BARD operates and supervises the on-campus Title IX office, health service and Emergency Medical Services ("EMS") providers, and is ultimately liable for the action and inaction of its agents and/or employees and students.  Defendant BARD received federal financial assistance; and as such, the prohibitions against sexual harassment and gender/sex discrimination contained in Title IX applied to Defendant.  Defendant BARD is also required to follow the provisions set forth by Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act, in addition to New York State law as enumerated herein.

9.      At all times material hereto, Defendant JOHN DOE, was a student of Defendant BARD located in Dutchess County, New York at the time of the incident.

10.      At all times material hereto, Plaintiff, JANE DOE, was a student and resident of Dutchess County, New York at the time of the incident, and is a member of a group protected by

Title IX because she is a female.  Plaintiff JANE DOE is a member of the protected group by Title VI as she is African-American, and is a member of the protected classes of Section 504 of the Rehabilitation Act and the ADA as a disabled person.

11.     This Court has personal jurisdiction over Defendant BARD on the grounds that Defendant BARD is conducting business within the State of New York.

12.     This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

## FACTUAL ALLEGATIONS

*Defendant BARD's Failures to Plaintiff JANE DOE*

13.     In September 2014, Plaintiff JANE DOE matriculated as a Freshman at BARD College.

14.     At the time of her admission, Plaintiff JANE DOE was designated as disabled but was undergoing continued examination to determine the proper diagnosis.  Plaintiff JANE DOE has since been diagnosed with Ehlerseanlos Disorder, fibromyalgia, osteoarthritis, hypermobility, and chronic joint pain.

15.     Plaintiff Jane Doe entered Defendant BARD dreaming of becoming an orthopedic surgeon like her father and was pre-med.  She wanted to specialize in pediatric orthopedics with a focus on musculoskeletal disorders so she could help children with medical problems similar to her own.  On September 25, 2015, Plaintiff JANE DOE's dream of completing her college education was derailed and her college experience turned into a nightmare when she was raped by another Bard student.

16.     In May 2015, Plaintiff JANE DOE met Defendant JOHN DOE for the first time at Bard's Spring Fling.  Almost immediately, Defendant JOHN DOE appeared to become fixated on

Plaintiff JANE DOE. The following week, on a night when they both were going to a music show with other friends, Defendant JOHN DOE grabbed Plaintiff JANE DOE's face and told her "you make me feel so alive." She informed him she was in a relationship, and yet he tried to kiss her anyway.  After being rebuffed, Defendant JOHN DOE spent the rest of the night staring at her.

17.     For the rest of May and into June 2015, Defendant JOHN DOE engaged in bizarre behavior, constantly texting, calling, leaving messages, and aggressively trying to convince her to leave her boyfriend.  When he couldn't get through to her, he'd leave multiple frantic voicemails. The voicemails were disturbing and violent, at times reciting scripture and making claims that "someone is after me" and "I'm burning."   Two days after receiving particularly alarming voicemails, Defendant JOHN DOE spoke to Plaintiff Jane DOE and nonsensically said he'd been hospitalized after setting himself on fire because somebody had "brought out a black dildo." Defendant JOHN DOE said "without you... I don't know what I would have done . . .I need you. I want to be with you."  The next day, Plaintiff JANE DOE received a call from somebody claiming to be Defendant JOHN DOE's mom who claimed to be with him in the hospital where he was recovering from alleged burns. Defendant JOHN DOE and his purported mother tried to manipulate Plaintiff JANE DOE into feeling like JOHN DOE's seemingly self-inflicted injury was her fault for not being more receptive to his advances.

18.     Plaintiff JANE DOE felt obligated to sometimes take Defendant JOHN DOE's calls during the summer of 2015 because she felt trapped and was made to feel guilty about his psychotic episode.  Defendant JOHN DOE, who is white, was fixated on Plaintiff JANE DOE being black. He incessantly eroticized and exoticized her hair, skin, and body and called Plaintiff JANE DOE a "nigga" and stated "I got my nigga license."  Defendant JOHN DOE said: "Now that I found you attractive, I now find every black girl attractive." Defendant JOHN DOE quoted a friend who had

said "black women are whores and cannot be trusted." Defendant JOHN DOE said that if he and Plaintiff JANE DOE met in the city, they should dress to match their race – he would wear white and she, black. He sent her pictures of black and white cookies.

19.     Knowing Plaintiff JANE DOE was intentionally celibate, Defendant JOHN DOE would often sexualize things, tell her he was naked and urge her to expose herself on Skype. He would speak of his own virility and sexual conquests. Throughout, Plaintiff JANE DOE firmly informed him she was celibate and wanted to stay that way. He would respond flippantly talking about the "black porn" he watches. She would cut short the calls when he became sexual.

20.     In August 2015 Defendant JOHN DOE reached out to Plaintiff JANE DOE and said he saw from her social media she was in New York City and urged her to meet him at the train station on her way back to Bard. She reluctantly agreed to meet him, but was dismayed once together when he grabbed her hand and said: "I've wanted to hold you" and "now we can be together."

21.     When they were back at school, one night in late September, Plaintiff JANE DOE and Defendant JOHN DOE both attended the same party off campus. At the party a friend remarked to Plaintiff JANE DOE that Defendant JOHN DOE was "hovering" around Plaintiff JANE DOE and "staring." Plaintiff JANE DOE agreed to be the designated driver that night and drove Defendant JOHN DOE to his friend's dorm. Plaintiff JANE DOE went into the dorm and watched a movie with Defendant JOHN DOE. Defendant JOHN DOE proclaimed "it would be a good idea for us" to have sex. Plaintiff JANE DOE firmly expressed that she wanted to stay celibate. Both were already on the bed. Defendant JOHN DOE forcefully pushed his face to hers, kissed her hard and trapped her underneath his weight. He pulled off his pants and tried to initiate intercourse without a condom. Plaintiff JANE DOE said no, and tried to push him away, but soon

realized there was nothing she could do to deter JOHN DOE, so she made him use a condom. Defendant JOHN DOE began to penetrate her vaginally.  The intercourse was extremely painful for Plaintiff JANE DOE.  She hit her head on the headboard and told Defendant JOHN DOE to stop.  She was not responsive to him and laid there hoping it would end while he aggressively penetrated her faster and faster.  Plaintiff JANE DOE began to cry hysterically.  She felt like she couldn't breathe beneath his weight. Eventually Defendant JOHN DOE gestured for Plaintiff JANE DOE to manually masturbate him.  By then, Plaintiff JANE DOE was rolled up in a fetal position crying. Plaintiff JANE DOE was bleeding out of her vagina. Once satisfied, Defendant JOHN DOE said, "that was the best I've ever had," and, "Now I know what they say about that African booty."

22.     On September 29, 2015, Plaintiff Jane Doe went to Bard College Health Services for treatment and was diagnosed as having an "abrasion/tear at 6:00 at introitus." Defendant BARD noted in her health records that she "was the victim of non-consensual sex and that she was bleeding from vaginal abrasions and tearing."  However, nobody at Defendant BARD talked to Plaintiff JANE DOE about her rights, safety, privacy, or talk to her about reporting the crime to the local police department

23.     During the next month, Defendant JOHN DOE called, emailed, texted, and left voicemails for Plaintiff JANE DOE.  He often stated "[he was] confused" "[they hadn't] talked in a week," "wondering how you're doing," and call me back" "I miss you. . . miss talking."

24.     Plaintiff JANE DOE became increasingly distressed when she saw Defendant JOHN DOE around campus. At a Halloween music event called "Smog", Plaintiff JANE DOE ran to the bathroom and vomited when she saw Defendant JOHN DOE approaching her.

25.     In November, 2015, Plaintiff JANE DOE fell into a deep depression as a result of being raped by Defendant JOHN DOE. Plaintiff JANE DOE attempted to take her own life. Defendant BARD's EMS team responded to Plaintiff JANE DOE's dorm and took her to another room, took her vital signs, and suggested she see a psychologist after she informed Defendant BARD's EMS that she had been raped by Defendant JOHN DOE, mentioning her rapist too was a student at Defendant BARD. EMS did not take her to a hospital or instruct her to report the rape to local authorities. The following day, Plaintiff JANE DOE went to see the Title IX coordinator Linda Morgan and requested a No Contact Order after informing the Title IX officer that a fellow Defendant BARD student, raped her.

26.     Over the next six months, Defendant JOHN DOE, continued to incessantly stalk and harass Plaintiff JANE DOE. Defendant JOHN DOE contacted her by phone, sent her messages and left voicemails, and showed up in places where he knew she would be located on campus.

27.     During that period, JANE DOE repeatedly sought a No Contact Order. On March 6, 2016, Plaintiff returned to the Title IX office to again request a No Contact Order. Once again, Plaintiff reported the fact that she had been the victim of a sexual battery, racial discrimination, ongoing stalking, sexual harassment and assault by the student perpetrator, to Title IX coordinator Linda Morgan ("Morgan"), and pleaded once more for Defendant BARD's assistance in obtaining a No Contact Order immediately. JANE DOE was denied a No Contact Order via email on March 7, 2016, by Morgan. Morgan instead said she would take it upon herself to tell Defendant JOHN DOE to stop contacting Plaintiff JANE DOE and that further contact could result in a No Contact Order.

28.     Despite the protracted process, Plaintiff was never told about other potential options to increase her safety, nor was she offered help in contacting local law enforcement.

29.     On March 10, 2016, Plaintiff JANE DOE was denied a No Contact Order once again by Defendant BARD's Title IX coordinator Linda Morgan. Notably, also in March 2016, Defendant JOHN DOE, reported an incident involving a male student and was gratuitously OFFERED a No Contact Order by Defendant BARD's Title IX coordinator, Linda Morgan. Having been refused any and all protection by Defendant BARD even after providing actual notice of the perpetrator's criminal conduct on *several* occasions, Plaintiff JANE DOE was left alone to continue fending for herself on campus, to process the trauma of the rape, racial discrimination, continued stalking, and harassment by Defendant JOHN DOE, all the while trying to cope with genetic predispositions and physical disabilities, interfering with her ability to obtain an education.

30.     Plaintiff JANE DOE began experiencing panic attacks related to the incident and stalking.  Professors and deans were largely unsupportive.  On April 3, 2016, Plaintiff JANE DOE sent an email to Timand Bates, Assistant Dean of Student Affairs ("Dean Timand"),  advising him that earlier that morning she had a panic attack and had to go to Dutchess Hospital and that she was ordered to rest the next few days to allow her body to acclimate to new pain and anxiety medication and that she needed help communicating this to her instructors.  In response, Dean Timand sent an email on April 5, 2016 to Plaintiff JANE DOE stating: "I think you need to be really careful to not inundate your professors with information about your wellbeing that is essentially seeking excused absences… As I explained in person, you are required to be in classes despite the events in your life that are outside of your control (sickness, death in family, etc.). If medical/family problems get too cumbersome to deal with during a semester, students use medical leave to protect their transcript and to gain the space they need to address the root causes of

concern.  Even with accommodations in place through Amy Shein's office, the accommodations must be 'reasonable,' and missing lots of classes doesn't satisfy that stipulation.  In any event I just want to be really clear that my expectation is that you will attend class this week." Dean Timand's comments are inconsistent with Title IX, ADA, the Rehabilitation Act, and with Defendant BARD's own policies.

31.     Plaintiff JANE DOE advised Dean Timand that she was unsure of what information she should be careful giving professors and burdening them with her personal experiences at a traumatic time; however, she said she would continue to go to class regardless of pain, sickness, death in the family and trauma due to sexual violence.  On April 6, 2016, Dean Timand responded and stated via email that it appears the content of his email caught her off guard and, "I am sorry," and that, "at some point absences cannot be excused regardless of reason, and based on notes with Jude, Florin, and Ford you are teetering on edge with absences."

32.     Plaintiff JANE DOE's mental health and ability to focus on her education in light of having been raped, racially discriminated against, and subjected to continued stalking and harassment by Defendant JOHN DOE, continued to decline.

33.     Plaintiff JANE DOE learned that she was not the only woman on campus who was terrorized and terrified by Defendant JOHN DOE and whose concerns were ignored by the Title IX Office.  A Palestinian woman, upon information and belief, also sought – and was denied – a No Contact Order.   It wasn't until a white female student reported him for the same type of sexual misconduct and otherwise prohibited behavior, that Defendant BARD finally issued No Contact Orders for all women and launched an investigation into Defendant JOHN DOE on or about May, 26, 2016 regarding the following acts:

1)  Non-Consensual Intercourse, occurring on or about September 25, 2015 with Plaintiff JANE DOE which took place on campus at Manor Annex;

2)  Sexual Harassment which occurred on multiple instances:

a.   June 5, 2015, where Defendant JOHN DOE contacted Plaintiff JANE DOE via phone to aggressively convince her to leave her current partner;

b.   July 2015, wherein Defendant JOHN DOE humiliated Plaintiff JANE DOE by incessantly talking about race including statements about Plaintiff JANE DOE's hair, skin and body, and his casual use of the "N" word;

c.   July 2015, wherein Defendant JOHN DOE pressured Plaintiff JANE DOE to enter into a committed relationship with him, made unwelcome comments regarding her celibacy; forcing Plaintiff JANE DOE into having conversations regarding his sexuality, his virility and the women whom he was sexually active with at the time because she refused to engage in sexual activities with him;

3)  Sexual Exploitation, which occurred during August 2015, wherein Defendant JOHN DOE attempted to engage in conversations about sexual intercourse with her, requested that she show body parts to him via video chat;

4)  Stalking – which occurred on multiple occasions, to wit:

a.   May 2015, wherein Defendant JOHN DOE targeted her due to her personal relationship with his recent ex-girlfriend;

b.   June 2, 2015, wherein Defendant JOHN DOE called, texted, and left multiple voicemails in an attempt to get her to contact him.  When she did not respond, he proceeded to leave multiple disturbing and frantic voicemails for her; and,

    c.   October 2015, wherein Defendant JOHN DOE harassed Plaintiff JANE DOE via voicemail, text messages and email.

34.    Upon information and belief,   after investigating the three distinct incidents, interviewing witnesses, and considering evidence,   BARD finally found in favor of the women and expelled Defendant JOHN DOE.

35.    Even after Defendant BARD made the aforementioned findings, it continued to discriminate against Plaintiff JANE DOE because of her gender, sex, race, genetic predisposition, and disability, retaliating against her. On several occasions, her professors refused to provide any reasonable accommodations, including one professor, who rather than accepting an assignment an hour late, advised instead for Plaintiff JANE DOE to just take a zero instead.

36.    On June 15, 2016, David Shein, Defendant BARD's Dean of Studies wrote to Plaintiff and advised her that she had been placed on mandatory leave of absence by the "Faculty Executive Committee" which reached its decision after so-called careful review of her academic record and in consultation with members of faculty and administration.  This correspondence went on to state that Plaintiff JANE DOE's academic work has been below the level Defendant BARD expects and that her continuation at Defendant BARD was unlikely to fulfill graduation requirements, and with no mention of her major struggles and trauma from the rape and botched investigation, stated the: "academic and social pressures of college can be significant.  Our hope is that spending time away from [Defendant BARD] will allow you to focus on academic goals and assess the direction of educational future…" and that, "A leave of absence can be disruptive and unsetting, and I am willing to discuss committee's decision with you."

37.    In July 2016, Plaintiff JANE DOE's mother sent an email correspondence to Bethany Nohlgren, Dean of Students, discussing Plaintiff's recent diagnosis of EDS, change in

medications, and her harsh treatment by professor Laura Ford, asking Dean to rectify this situation. Dean Nohlgren responded to the email by simply stating that she would look into the incident, yet there is no documentation on file regarding the results of this investigation.

38.    On August 17, 2016 Morgan sent an email entitled, "Investigation Update," stating that a question arose as to whether Plaintiff JANE DOE's investigation would be under Defendant BARD's 2015-2016 Gender-Based Misconduct policy or the newly adopted policy 2016-2017. Linda Morgan was informed by Defendant BARD's legal counsel that this investigation would be governed by Defendant BARD's Gender-Based Misconduct Policy for 2015-2016.  It is important to note that at the time of Defendant JOHN DOE's misconduct and Defendant BARD's deliberate indifference, Defendant BARD's policies were not in compliance with Title IX mandates and had to be rewritten to conform therewith.

39.    Defendant BARD's actions and omissions were also in direct violation of the policies and procedures set forth in its Student Handbook. The Student Handbook states that behaviors that violate policies articulated in the Student Handbook, or in the Defendant BARD College Catalogue, are unacceptable and formal procedures may be initiated as a result in accordance with the Student Handbook.   Additional BARD policies are set forth in its *Harassment, Discrimination and Stalking Policy*.

Defendant BARD's 2015-2016 Gender-Based Misconduct Policy states in relevant part:

> **1. NOTICE OF NONDISCRIMINATION**
> Bard College is committed to ensuring equal access to its educational programs and equal employment without regard to an individual's sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status, or any other characteristic protected by federal, state, or local law. Students, employees, applicants, and other members of Bard College community (including, but not limited to, vendors, visitors, and

guests) shall not be subject to discrimination or harassment prohibited by law or otherwise treated adversely based upon a protected characteristic. Similarly, the College will not tolerate harassing, violent, intimidating, or discriminatory conduct by its students, employees, or any other member of, or visitor to, the College community. This includes, without limitation, sexual harassment, sexual assault, sexual violence, dating violence, and domestic violence.

## 2. POLICY STATEMENT

Bard's gender-based misconduct policy is in accordance with federal and state laws and regulations prohibiting discrimination and harassment, as well as provisions of response and services for victims of interpersonal violence. These laws include: Title IX, Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, Section 304 of the Violence Against Women Reauthorization Act and New York State Enough Is Enough legislation. These laws and the College prohibit discrimination and harassment, including gender-based misconduct. Bard College and its affiliated programs are committed to providing a learning environment free from sexual and gender-based harassment, discrimination, and assault (hereafter referred to as gender-based misconduct).

Bard College is committed to preventing, responding to, and remedying occurrences of gender-based misconduct. To that end, the College provides services and advocacy support for individuals who have been impacted by gender-based misconduct, as well as accessible, prompt, and thorough methods of investigation and resolution of incidents of gender-based misconduct.

Additionally, the College provides educational and preventative programs for employees and students throughout the academic year that promote awareness of intimate partner violence, sexual assault, and stalking. These include: primary prevention and awareness, definitions of domestic and intimate partner violence, dating violence, sexual assault, stalking, consent, bystander intervention techniques and safe practices, and risk reduction in the form of recognizing warning signs and how to avoid unwelcome interaction.

The gender-based misconduct policy should be interpreted and applied in a manner consistent with the principles of free inquiry, free expression, and free speech to which Bard College is committed. The College's policy against discrimination, harassment, gender-based misconduct, and retaliation is not

14

intended to stifle these freedoms. Prohibited discrimination, harassment, and retaliation are neither legally protected expression nor the proper exercise of academic freedom.

## 3. SCOPE OF POLICY

The College will respond to all alleged incidents of gender-based misconduct, inclusive of sexual harassment, gender-based harassment, nonconsensual sexual intercourse, nonconsensual sexual contact, intimate partner violence, stalking, and sexual exploitation reported to have occurred:

- on campus;
- off campus involving members of the Bard community;
- through social media or other online interactions involving members of the Bard community, particularly if campus safety is affected;
- during official Bard programs, regardless of location.

Action taken and support provided regarding incidents of misconduct involving contract employees, visitors, and guests may be limited; however, the College will endeavor to respond, sanction and/or remedy to the extent possible, practical, and reasonable.

## 4. DEFINITIONS OF GENDER-BASED MISCONDUCT

**Sexual Harassment:** Sexual harassment is defined as unwelcome, sexually based verbal, written, visual, or physical conduct. Sexual harassment creates a hostile environment, and may be disciplined when it is sufficiently severe, persistent, or pervasive that it:

- has the effect of unreasonably interfering with, denying, or limiting employment opportunities or the ability to participate in or benefit from the College's educational, social, and/or residential program; and/or is,
- based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.

**Gender-Based Harassment:** Acts of verbal, nonverbal, or physical aggression, intimidation, stalking, or hostility based on gender or gender stereotyping constitute gender-based harassment. Gender-based harassment can occur if persons are harassed either for exhibiting what is perceived as a stereotypical characteristic for their sex, or for failing to conform to stereotypical notions of masculinity or femininity. In order to constitute harassment, the conduct must be severe, persistent, and/or pervasive, such that it has the effect of unreasonably interfering with an individual's academic or employment performance or creating an intimidating, hostile, or offensive academic, living, or working environment.

15

**Intimate Partner Violence (inclusive of domestic and dating violence):** The willful intimidation, economic control, manipulation, humiliation, isolation, coercion, threat of or actual physical harm as part of a systematic pattern of power and control perpetrated by one intimate partner against another. It includes physical violence, sexual violence, psychological violence, and emotional abuse. Intimate partner violence can be a single act or a pattern of behavior in a relationship. Intimate partner relationships are defined as short- or long-term relationships (current or former) between persons, intended to provide some emotional, romantic, and/or physical intimacy.

**Stalking:** A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

**Sexual Misconduct:**
**Nonconsensual Sexual Intercourse:** Any form of sexual intercourse (anal, oral, or vaginal), however slight, with any object or body part, upon any person, that is by force and/or without consent. Intercourse is defined as anal, oral, or vaginal penetration by an inanimate object or another's body part.

**Nonconsensual Sexual Contact:** Any intentional sexual touching, however slight, with any object or body part, upon any person, that is by force and/or without a person's consent. Intentional sexual conduct may include contact with the breasts, buttocks, groin, or touching another with any of these body parts, or making another person touch any of these body parts; any intentional bodily contact of a sexual manner.

**ADDITIONAL DEFINITIONS**
**Consent:** Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.  Consent may be initially given but withdrawn at any time.  Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly

16

choose to participate in sexual activity. Incapacitation may be caused by a lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent. Consent cannot be given when it is the result of coercion, intimidation, force, or threat of harm. When consent is withdrawn or can no longer be given, sexual activity must stop.

**Retaliation:** To take an adverse action against an individual or subject an individual to conduct that has the purpose or effect of unreasonably interfering with that individual's educational experience, work or academic performance, or creates an educational experience or academic or work environment that a reasonable person would find intimidating or hostile because of something that individual did to apply this policy. This may include complainants, respondents, witnesses, and other reporting persons.

## 8. FORMAL REPORTING
### a. Institutional Report
Any member of the community who wishes to file a report for gender-based misconduct may do so by following the procedures outlined below. Any responsible employee with knowledge of gender-based misconduct occurring among members of the Defendant BARD community must contact the Title IX Office to file a report. Individuals who wish to submit a report, or have questions regarding the reporting procedures for gender-based misconduct, may meet in person or talk by telephone with the Title IX Coordinator, or designee, to discuss the process, policies, resources, their institutional rights, as well as rights for reporting to the local authorities. They may also discuss options for no-contact notices through the College or local law enforcement and orders of protection through the court system. When information pertaining to specific incidents of alleged gender-based misconduct is shared, the Title IX Office will attempt to protect the privacy of all parties involved but is required to initiate a preliminary inquiry and determine what, if any, further investigation is warranted. However, this does not mean a formal investigation is automatically initiated.

### d. Criminal Report
Individuals have the right to decide whether or not to file a report with the New York State Police or the local enforcement agency where the misconduct occurred. The Title IX Coordinator is available to assist individuals in the process of reporting criminal complaints. Red Hook Police Department (845-758-0060)

## 9. INSTITUTIONAL INVESTIGATION PROCEDURES

Student reports of gender-based misconduct will be investigated in a thorough, reliable, impartial, and prompt fashion, with the goal of completing the process as expeditiously as possible and the intention to complete same within 60 days of notice to the institution, if possible…

**13. INTERIM MEASURES**

Individuals who have been involved in an incident of gender-based misconduct have a right, regardless of their decision to file a formal complaint, to request interim measures such as: restrictions on contact between the complainant and respondent; restrictions from areas on campus; removal or relocation from residential areas, classroom environments, or employment locations; temporary suspensions (of respondents); academic accommodations in the form of tutoring, independent study, or course withdrawal without academic penalty.

**Disability Accommodations**

Students seeking accommodations for a disability in connection with this process should contact the Disability Services Office.

**15. STUDENTS BILL OF RIGHTS**

All students have the right to: Make a report to local law enforcement or state police; Have disclosures of domestic violence, dating violence, stalking, and sexual assault taken seriously; Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the institution; Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard; Be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available; Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed or should have acted in a different manner to avoid such crimes or violations; Describe the incident to as few institution representatives as practicable and not be required to unnecessarily repeat a description of the incident; Be protected against retaliation by the College, any student, the accused and/ or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the College.

**Defendant BARD's Harassment, Discrimination and Stalking Policy*** states in relevant part:

*Concerns of gender-based harassment, discrimination or stalking should refer to the Gender Based Misconduct policy and procedures.

18

Discrimination and harassment of any kind, will not be tolerated. Those believing that they have been unlawfully harassed or discriminated against on the basis of their sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status, should contact the Dean of Student Affairs Office, Human Resources, or Office of Safety and Security.

### Discrimination

Discrimination is the unlawful and intentional act of unfair treatment of a person based sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-or offender status.

### Harassment

Unwelcome, hostile, or inappropriate conduct directed toward an individual because of their protected status. Such conduct violates College policy if it (1) has the purpose or effect of creating an intimidating, hostile, or offensive working, living, or learning environment for the affected individual, or (2) substantially interferes with that individual's working, living, or learning environment. This can include persistent comments or jokes about an individual's religion, race, age, or gender; verbal behavior, including insults, remarks, epithets, or derogatory statements directed at an individual or group; nonverbal behavior, including graffiti, inappropriate physical advances short of physical violence; and assault, including physical violence or the threat of physical violence.

### Stalking

A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

### Retaliation

To take an adverse action against an individual or subject an individual to conduct that has the purpose or effect of unreasonably interfering with that individual's educational experience, work or academic performance, or creates an educational experience or

academic or work environment that a reasonable person would find intimidating or hostile because of something that individual did to further this policy. This may include complainants, respondents, witnesses, and other reporting persons.

## Defendant BARD College Created a Hostile Environment Prior to Plaintiff JANE DOE's Attendance and During All Times Relevant to the Subject Incident

### *Defendant BARD's Recent History of Failures Responding to Sexual Assault*

40.     Defendant BARD created a hostile environment on its campus which permitted, ratified, and was deliberately indifferent to sex and gender bias, sexual harassment, and sexual battery/rape of women on its campus.  During and since the time of the subject incident involving Plaintiff JANE DOE, Defendant BARD was the subject of at least six (6) federal Title IX Complaints based on its mishandling of sexual assault allegations. In fact, on December 30, 2015 the United States' Department of Education's Office of Civil Rights (the "OCR") opened an investigation into Defendant BARD, due to the fact that Defendant BARD did not disclose a victim's rights to a No Contact Order. The OCR noted that Defendant BARD failed to follow its own policies when it comes to sexual assault violations. Tamara Stafford ("Stafford"), Defendant BARD's Title IX Coordinator, demanded that a female and her friend who came for emotional support — sign an agreement that, among other things, prohibited them from talking about the assault, the details of the case, and the perpetrator, violation of the students' rights.

41.     Continuing its tradition of creating a hostile environment that permitted, ratified and was deliberately indifferent to gender bias, sexual harassment, and sexual battery and rape of women on its campus, on or about April 14, 2015 while addressing students about his role as final arbiter of sexual assault cases, Defendant BARD's President Leon Botstein made statements revealing his bias that victims ultimately bear responsibility if sexually assaulted.  Three students who were present during the discussion about sexual assault reported Botstein comment: "You

20

have to use common sense. A girl drinking a bottle of vodka and then going to a party is as wise as me walking into a Nuremberg Rally while wearing the yellow badge." President Botstein has never denied making said comment.

42.     In 2015 another female student attempted to commit suicide by overdosing on pills after she learned that Defendant BARD would allow male student Sam Ketchum to remain on campus after the college determined that he violated the school's sexual assault policy. When JANE DOE II attempted to commit suicide, as paramedics worked to save her life, a police officer found a letter in her room from Defendant BARD dated March 20, 2015 which delivered devastating news: the student whom JANE DOE II claimed raped her several weeks earlier would be allowed to stay on campus and take classes, even though Defendant BARD had determined that he had violated the school's sexual assault policy. The decision seemed to clearly contradict school policy at the time, which dictated that students who are determined to have sexually assaulted another student are to be suspended, at minimum. Defendant BARD's determination meant that JANE DOE II would almost certainly encounter her alleged assailant on the small campus of just 2,300 students. JANE DOE II said her anxiety about that likelihood was part of what drove her to attempt to end her life on March 26, 2015. On April 24, 2015, the Dutchess County Sheriff's Department arrested Defendant BARD student Sam Ketchum on a felony rape charge. Ketchum was indicted by a grand jury. JANE DOE II's experience at Defendant BARD led the *Huffington Post* to conclude: "The college ignored its own rules about punishing assaults, and it nearly cost (the female student) her life."

43.     JANE DOE II also filed a complaint with the OCR stating that Defendant BARD failed to follow its own discipline policy and initially discouraged her from going to police. Her main objective, she said, was to get Ketchum removed from the tight-knit campus for the rest of

the semester until she graduated. JANE DOE II said she trusted the college to handle the matter appropriately, having worked for the school's student-staffed crisis hotline.  She called and emailed the school's Title IX office on February 9, the first day she could. Stafford, Defendant BARD's Title IX coordinator, invited her to talk two days later.  JANE DOE II and her roommate, who accompanied her to the meeting, both recall Stafford discouraging her from going to the police. The worst news came on March 20, when she received a letter from Defendant BARD stating it had determined that Ketchum had violated the sexual assault policy. His punishment consisted of an order not to contact JANE DOE II, mandated counseling on alcohol use and, "effective consent," and social probation — meaning any additional conduct violations at Defendant BARD would "result in more severe sanctioning." The letter left her distraught as Defendant BARD's sexual assault policy explicitly stated that violations would be met with a minimum sanction of suspension. Four days after she filed the appeal, the Dutchess County Sheriff's Office arrested Ketchum.

44.     After news of Ketchum's arrest spread, Defendant BARD College President Leon Botstein sent a self-serving email to the student body including Plaintiff JANE DOE, in late April 2015 insisting that Defendant BARD had followed all federal actions, "Unlike other institutions, [Defendant BARD] has never been found to be negligent in [handling sexual assault cases]," Botstein wrote.  Both Ketchum and JANE DOE II received letters from Botstein on May 1, 2015 saying he'd only just seen the "materials" from the initial investigation and was going to impose a more severe sanction accordingly. Ketchum was immediately suspended, until at least spring 2016. "The case was reviewed [on appeal] and more appropriate sanctions were imposed." "The initial response of probation was found inadequate and the college suspended the student in accordance with college guidelines." Botstein's assertion that he did not see the investigation materials until

after the appeal is inconsistent with what school policy dictated at the time. According to the policy, the college president is supposed to have an opportunity to review the results of an investigation before punishment is levied.

45.    Mark Primoff, a spokesman for Defendant BARD College, said that JANE DOE II reported her attack to school officials in early February and the college immediately initiated an internal investigation, as required by law.   Primoff said colleges are required to inform a complainant at the time the report is made that he or she can choose to go to the police, and "we offer to help them to actually do that."  However, another student named Morgan stated that JANE DOE II,' "was absolutely discouraged from going to the police."  Bodwell further stated: "there's actually a very clear pressure not to report, at this institution, to the police."

46.    A group of BARD students met with administrators in mid-May 2015 and pressed them on this apparent discrepancy, according to audio recordings of the meeting. Students were informed that the process had changed. Defendant BARD spokesman, Primoff, declined to comment about what changes were made to the sexual assault policy and when, except to say the school regularly reviews its policies to ensure they're in compliance with federal regulations and was doing so at the time the changes were made. He added that Defendant BARD always tells assault victims they have a right to report to police, despite JANE DOE II's claim that administrators discouraged her from doing so.  The roommate who accompanied JANE DOE II to her meeting with Stafford said she hoped Defendant BARD administrators would recognize that they must treat sexual assault cases as seriously as any other violent criminal offense. "The lack of transparency and inordinately lengthy process almost cost my friend her life," she said, "and that should certainly be a teaching moment to not only Defendant BARD, but all academic institutions."

*Defendant BARD's Racial Composition*

47.     Defendant BARD claims to have an eight percent (8%) African-American population, however, Defendant BARD has been accused by its African-American students of systemic racism.  In 2011 an art exhibition in celebration of Black History Month was vandalized. As a result of the racial tension on Defendant BARD's campus, on November 15, 2015, Blackout Bard 2015 commenced.

48.     Punctuating the racial hostility and aggression on Defendant BARD's campus, after Blackout Bard occurred Defendant BARD's Multicultural Diversity Committee student space was broken into and vandalized and spray-painted with racist caricatures.  Two weeks later, a Freshman student, Orlando Riley, received a note under his door allegedly written by someone he knew on campus stating that he didn't fit in on Defendant BARD's campus because he was too "black." Racial hostility towards persons of African-American descent was clearly evident and permeated every part of Defendant BARD affecting Plaintiff JANE DOE's college experience and a moving force and cause behind the violations of Plaintiff's rights as enumerated herein.

## COUNT I
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS by DEFENDANT JOHN DOE

49.     Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

50.     At all material times hereto Defendant JOHN DOE was a student attending Defendant BARD.  As Defendant JOHN DOE voluntarily attended BARD, he agreed as a part of his attendance to abide by BARD'S internal policies and procedures, and in particular, how he should conduct himself with other students.  BARD'S policies and procedures created duties for Defendant JOHN DOE, including but not limited, duties owed to other students regarding his behavior, including but not limited to its Student Handbook, Gender-Based Misconduct Policy,

and any and all policies prohibiting racial discrimination.   Defendant JOHN DOE breached numerous duties owed to fellow BARD student Plaintiff JANE DOE.

51.   In relevant part as reiterated from above, the Gender-Based Misconduct Policy states in relevant part:

> **3. SCOPE OF POLICY**
> The College will respond to all alleged incidents of gender-based misconduct, inclusive of sexual harassment, gender-based harassment, nonconsensual sexual intercourse, nonconsensual sexual contact, intimate partner violence, stalking, and sexual exploitation reported to have occurred:
> - on campus;
> - off campus involving members of the Bard community;
> - through social media or other online interactions involving members of the Bard community, particularly if campus safety is affected;
> - during official Bard programs, regardless of location.
>
> Action taken and support provided regarding incidents of misconduct involving contract employees, visitors, and guests may be limited; however, the College will endeavor to respond, sanction and/or remedy to the extent possible, practical, and reasonable.
>
> **4. DEFINITIONS OF GENDER-BASED MISCONDUCT**
> **Sexual Harassment:** Sexual harassment is defined as unwelcome, sexually based verbal, written, visual, or physical conduct. Sexual harassment creates a hostile environment, and may be disciplined when it is sufficiently severe, persistent, or pervasive that it:
> - has the effect of unreasonably interfering with, denying, or limiting employment opportunities or the ability to participate in or benefit from the College's educational, social, and/or residential program; and/or is,
> - based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.
>
> **Gender-Based Harassment:** Acts of verbal, nonverbal, or physical aggression, intimidation, stalking, or hostility based on gender or gender stereotyping constitute gender-based harassment. Gender-based harassment can occur if persons are harassed either for exhibiting what is perceived as a stereotypical characteristic for their sex, or for failing to conform to stereotypical notions of masculinity or femininity. In order to constitute harassment, the conduct must be severe, persistent, and/or pervasive, such that it has

the effect of unreasonably interfering with an individual's academic or employment performance or creating an intimidating, hostile, or offensive academic, living, or working environment.

**Intimate Partner Violence (inclusive of domestic and dating violence):** The willful intimidation, economic control, manipulation, humiliation, isolation, coercion, threat of or actual physical harm as part of a systematic pattern of power and control perpetrated by one intimate partner against another. It includes physical violence, sexual violence, psychological violence, and emotional abuse. Intimate partner violence can be a single act or a pattern of behavior in a relationship. Intimate partner relationships are defined as short- or long-term relationships (current or former) between persons, intended to provide some emotional, romantic, and/or physical intimacy.

**Stalking:** A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

**Sexual Misconduct:**
**Nonconsensual Sexual Intercourse:** Any form of sexual intercourse (anal, oral, or vaginal), however slight, with any object or body part, upon any person, that is by force and/or without consent. Intercourse is defined as anal, oral, or vaginal penetration by an inanimate object or another's body part.

**Nonconsensual Sexual Contact:** Any intentional sexual touching, however slight, with any object or body part, upon any person, that is by force and/or without a person's consent. Intentional sexual conduct may include contact with the breasts, buttocks, groin, or touching another with any of these body parts, or making another person touch any of these body parts; any intentional bodily contact of a sexual manner.

52.     On September 25, 2015, Defendant JOHN DOE engaged in unpermitted and harmful non-consensual sexual contact with Plaintiff, JANE DOE.

53.     Defendant JOHN DOE's non-consensual contact with Plaintiff JANE DOE included, but was not limited to nonconsensual groping and penetration of Plaintiff JANE DOE's vagina, and making racist and sexist statements, stalking her via telephone, stalking her person, cyberstalking her through social media, and otherwise causing injury and emotional distress, in violation of BARDS 2015-2016 Gender-Based Misconduct Policy.

54.     After this traumatic non-consensual encounter with Defendant JOHN DOE, Plaintiff JANE DOE' specifically sought medical treatment at Defendant BARD University Health Center, and Defendant BARD noted in Plaintiff JANE DOE's health records that she was the victim of non-consensual sex, that she was bleeding from vaginal abrasions and tearing, referred to as vaginal "introitus" tearing at the opening of her vagina, to wit: Plaintiff JANE DOE's health records created by Defendant BARD state that she *"was the victim of **non-consensual sex** and that she was bleeding from vaginal abrasions and tearing*." Even after the incident, Defendant JOHN DOE continued to stalk and harass Plaintiff Jane Doe.

55.     Defendant JOHN DOE owed a duty to Plaintiff JANE DOE to, among other things, comply with Defendant BARD's Gender-Based Misconduct Policy.

56.     Defendant JOHN DOE breached its duty to Plaintiff JANE DOE by sexually assaulting, harassing, and stalking her.

57.     Defendant JOHN DOE's breaches were the proximate cause of the injuries sustained by Plaintiff Jane DOE.

58.     Defendant JOHN DOE's act of non-consensual sex with Plaintiff JANE DOE carelessly and negligently inflicted such emotional distress by virtue of his conduct.

27

59.     Defendant JOHN DOE knew or should have known that Plaintiff JANE DOE would and did find such contact offensive and the actions of Defendant JOHN DOE constituted a negligent infliction of emotional distress upon Plaintiff JANE DOE.

60.     As a direct and proximate result of Defendant JOHN DOE's misconduct discussed herein, Plaintiff JANE DOE has suffered and will continue to suffer significant and severe mental anguish and emotional distress.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT II
## NEGLIGENCE OF DEFENDANT JOHN DOE

61.     Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

62.     At all material times hereto Defendant JOHN DOE was a student attending Defendant BARD and therefore as a member of Defendant BARD's student body was obligated to abide by the code of conduct set forth in Defendant BARD's policies and procedures. As Defendant JOHN DOE voluntarily attended BARD, he agreed as a part of his attendance to abide by BARD'S internal policies and procedures, and in particular, how he should conduct himself with other students.  BARD'S policies and procedures created duties for Defendant JOHN DOE, including but not limited, duties owed to other students regarding his behavior, including but not limited to its Student Handbook, Gender-Based Misconduct Policy relevant portions of which were reiterated in paragraph 50 above, and any and all policies prohibiting racial discrimination. Defendant JOHN DOE breached numerous duties owed to fellow BARD student Plaintiff JANE DOE.  BARD'S Student Handbook in relevant part states as follows:

28

## NOTICE OF NONDISCRIMINATION

Bard College is committed to ensuring equal access to its educational programs and equal employment without regard to an individual's sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status, or any other characteristic protected by federal, state, or local law. Students, employees, applicants, and other members of Bard College community (including, but not limited to, vendors, visitors, and guests) shall not be subject to discrimination or harassment prohibited by law or otherwise treated adversely based upon a protected characteristic. Similarly, the College will not tolerate harassing, violent, intimidating, or discriminatory conduct by its students, employees, or any other member of, or visitor to, the College community. This includes, without limitation, sexual harassment, sexual assault, sexual violence, dating violence, and domestic violence.

## DEFINITIONS OF GENDER-BASED MISCONDUCT

Sexual Harassment: Sexual harassment is defined as unwelcome, sexually based verbal, written, visual, or physical conduct. Sexual harassment creates a hostile environment, and may be disciplined when it is sufficiently severe, persistent, or pervasive that it:

- has the effect of unreasonably interfering with, denying, or limiting employment opportunities or the ability to participate in or benefit from the College's educational, social, and/or residential program; and/or is
- based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.

Gender-Based Harassment: Acts of verbal, nonverbal, or physical aggression, intimidation, stalking, or hostility based on gender or gender stereotyping constitute gender-based harassment. Gender-based harassment can occur if persons are harassed either for exhibiting what is perceived as a stereotypical characteristic for their sex, or for failing to conform to stereotypical notions of masculinity or femininity. In order to constitute harassment, the conduct must be severe, persistent, and/or pervasive, such that it has the effect of unreasonably interfering with an individual's academic or employment performance or creating an intimidating, hostile, or offensive academic, living, or working environment.

Intimate Partner Violence (inclusive of domestic and dating violence): The willful intimidation, economic control, manipulation, humiliation, isolation, coercion, threat of or actual physical harm as part of a systematic pattern of power and control perpetrated by one intimate partner against another. It includes physical violence, sexual violence, psychological violence, and emotional abuse. Intimate partner violence can be a single act or a pattern of behavior in a relationship. Intimate partner relationships are defined as short-or long-term relationships (current or former) between persons, intended to provide some emotional, romantic, and/or physical intimacy.

Stalking: A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

Sexual Misconduct:

Nonconsensual Sexual Intercourse: Any form of sexual intercourse (anal, oral, or vaginal), however slight, with any object or body part, upon any person, that is by force and/or without consent. Intercourse is defined as anal, oral, or vaginal penetration by an inanimate object or another's body part.

Nonconsensual Sexual Contact: Any intentional sexual touching, however slight, with any object or body part, upon any person, that is by force and/or without a person's consent. Intentional sexual conduct may include contact with the breasts, buttocks, groin, or touching another with any of these body parts, or making another person touch any of these body parts; any intentional bodily contact of a sexual manner.

63.     Defendant JOHN DOE's non-consensual contact with Plaintiff JANE DOE included, but was not limited to nonconsensual groping and penetration of Plaintiff JANE DOE's vagina, and making racist and sexist statements, stalking her via telephone, stalking her person, cyberstalking her through social media, and otherwise causing injury and emotional distress, in violation of BARDS 2015-2016 Gender-Based Misconduct Policy.

30

64.    By Fall semester 2015 Defendant JOHN DOE's harassment escalated and culminated in forced and non-consensual sex against Plaintiff JANE DOE on September 25, 2015. Defendant JOHN DOE continued to stalk, harass, and threaten Plaintiff JANE DOE which led to a significant and consistent decline in her mental health and physical health, including an attempted suicide.

65.    After an extended and unwarranted delay discussed more fully herein, Defendant BARD investigated Defendant JOHN DOE's misconduct towards Plaintiff JANE DOE, and Defendant BARD found that Defendant JOHN DOE engaged in the following acts which are strictly prohibited by the polices set forth in the Student Handbook: 1) sexual harassment; 2) harassment; 3)sexual battery; 4) stalking; 5) racial discrimination; 6) verbally offensive and abusive language; 7) physical intimidation; 8) sexual coercion; 9) disturbing and offensive language re: ethnicity; 10) manipulation; and 11) unwanted sexual intercourse, and these acts breached the duties owed to Plaintiff JANE DOE as proscribed in Defendant BARD's Student Handbook and as set forth herein.

66.    Defendant JOHN DOE actually knew and/or should have known of the dangers posed by failing to adhere to the code of conduct and policies set forth in Defendant BARD's Student Handbook, which code of conduct he agreed to adhere to by electing to be a member of Defendant BARD's student body.

67.    It was reasonably foreseeable to Defendant JOHN DOE that his actions and inactions in violation of Defendant BARD'S Student Handbook were likely to result in violations of Plaintiff JANE DOE's rights and resulting physical and emotional distress.

68.    Defendant JOHN DOE'S actions and inaction actually and proximately caused the injuries and damages sustained by Plaintiff JANE DOE.

31

69.     As a result of the many breaches of Defendant BARD's Student Handbook to the ultimate detriment of Plaintiff JANE DOE, she suffered severe physical and psychological injuries and exacerbation of her predisposed genetic and otherwise disabling medical conditions.  Plaintiff JANE DOE also had to endure the fear and indignity of being sexually assaulted, battered, and harassed, stalked, and being discriminated against based on her race and gender, after and as result of reporting misconduct to the appropriate Defendant BARD authorities.

70.     As a result of Defendant JOHN DOE's breaches of the duties owed to other students set forth in Defendant BARD's Student Handbook, Plaintiff JANE DOE suffered panic attacks resulting in her having to be medicated, a suicide attempt, deterioration of her disabling medical conditions, both genetic and developing after she attended Defendant BARD, hostility in her classroom and amongst her peers, and dismissal of her concerns after reporting the same to Defendant BARD senior faculty members, and mandatory academic leave.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

### COUNT III
### NEGLIGENCE of DEFENDANT BARD

71.     Plaintiff JANE DOE hereby incorporates paragraphs 1-46  as though fully set forth herein.

72.     This is an action brought against Defendant BARD pursuant to the laws of the state of New York for negligence.

73.     At all times material hereto, Defendant BARD was responsible for the action and conduct of its employees and agents while in the course and scope of their employment with Defendant BARD.  The above-referenced Defendant BARD Administrators, Title IX

Administrators, Professors, Defendant BARD EMS, Defendant BARD Health Services staff were all employees and/or agents of Defendant BARD and acting within the course and scope of their employment with same, in furtherance of the interest of Defendant BARD, and with Defendant BARD's consent.

74.     As such, Defendant BARD is liable for all of its employees and/or agents' acts and omissions that gave rise to these actions and inaction.

75.     Defendant BARD by and through its employees and agents, owed a duty to Plaintiff JANE DOE, to act in a prudent and reasonable manner with regard to her health, safety, and rights. Defendant BARD owed duty to provide responsible and effective operations of its college and administration including establishing proper policies, customs, and regulations of its various departments and for its employees and/or agents.

76.     Defendant BARD owed a legal duty to supervise, discipline, and to properly train, and terminate employment if necessary, of its employees, administrators, and/or agents.

77.     Upon information and belief and as cited supra, prior to the sexual assault and battery of Plaintiff JANE DOE, Defendant BARD had a custom or policy of failing to properly train, retrain, supervise, and discipline employees, administrators, and agents on how to properly handle sexual assault and battery, Title IX complaints, the issuance of No Contact Orders for students, reporting requirements and advisement of rights of rape victims, how to handle suicidal students, especially in light of prior known issues of sexual violence, rape, and suicide attempts on Defendant BARD's campus and as perpetrated against Defendant BARD students.

78.     Defendant BARD employees, administrators, and agents were not subject to any discipline or any additional training as a result of the known issues pertaining to rape, sexual

assault, and suicide attempts of students on campus. Defendant BARD's duties were non-discretionary in nature.

79.    Defendant BARD breached the duties owed to Plaintiff JANE DOE as mentioned in paragraphs 1-46 in numerous ways including, failing to grant a No Contact Order on multiple occasions including after a known suicide attempt, failing to instruct her to report to the police department that she was a victim of sexual battery and to have a rape kit performed, failing to conduct an investigation when she initially reported the sexual battery, taking interim measures to ensure her physical and mental health and safety and to aide in her ability to participate in her education, in addition to many other breaches of said duties owed to Plaintiff JANE DOE. Under VAWA, Defendant BARD was obligated to advise Plaintiff JANE DOE of her option to, or not to, notify and seek assistance from law enforcement and campus authorities, which did not occur until approximately eight (8) months after she initially reported. Defendant BARD was also required to inform Plaintiff JANE DOE of her rights and institutional responsibilities regarding judicial no-contact, restraining, and protective orders, which also failed to occur.

80.    Defendant BARD actually knew and/or should have known of the dangers posed by failing to ensure proper policies and procedures were in place, by failing to properly train, re-train and supervise its employees, administrators, and agents, and by negligently retaining the employment of same, and that it was reasonably foreseeable that said actions and inactions were likely to result in violations of Plaintiff JANE DOE's rights.

81.    As a result of the breach of said duties, Defendant BARD actually and proximately caused the injuries and damages sustained by Plaintiff JANE DOE.

82.    As a result of the many breaches by Defendant BARD of its obligations and duties to their students to the ultimate detriment of Plaintiff JANE DOE, she suffered severe physical and

psychological injuries and exacerbation of her predisposed genetic and otherwise disabling medical conditions.  Plaintiff JANE DOE also had to endure the fear and indignity of being sexually assaulted, battered, and harassed, stalked, and being discriminated against based on her race and gender, after and as result of reporting misconduct to the appropriate Defendant BARD authorities.  Rather than having her rights protected by Defendant BARD, this institution took absolutely no appropriate, remedial actions on her behalf.  Instead, Plaintiff JANE DOE had to watch this White male student and similarly situated White female student easily receive the treatment and recourse that she was also entitled to and was damaged as a direct result.  Plaintiff JANE DOE suffered panic attacks resulting in her having to be medicated, a suicide attempt, deterioration of her disabling medical conditions, both genetic and developing after she attended Defendant BARD, hostility in her classroom and amongst her peers, and dismissal of her concerns after reporting the same to Defendant BARD senior faculty members, and mandatory academic leave.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

### COUNT IV
### GROSS NEGLIGENCE OF DEFENDANT BARD

83.     Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

84.     This is an action brought against Defendant BARD pursuant to the laws of the state of New York for gross negligence.

85.     At all times material hereto, Defendant BARD was responsible the action and conduct of its employees and agents while in the course and scope of their employment with

Defendant BARD. The above-referenced Defendant BARD Administrators, Title IX Administrators, Professors, Defendant BARD EMS, Defendant BARD Health Services staff were all employees and/or agents of Defendant BARD and acting within the course and scope of their employment with same, in furtherance of the interest of Defendant BARD, and with Defendant BARD's consent.

86.     As such, Defendant BARD is liable for all of its employees and/or agents' acts and omissions that gave rise to this action.

87.     Defendant BARD by and through its employees and agents, owed a duty to Plaintiff JANE DOE, to act in a prudent and reasonable manner with regard to her health, safety, and rights. Defendant BARD owed duty to provide responsible and effective operations of its college and administration including establishing proper policies, customs, and regulations of its various departments and for its employees and/or agents. Defendant BARD owed a legal duty to supervise, discipline, and to properly train, and terminate employment if necessary, of its employees, administrators, and/or agents.

88.     Upon information and belief and as cited supra, prior to the sexual assault and battery of Plaintiff JANE DOE, Defendant BARD had a custom or policy of failing to properly train, retrain, supervise, and discipline employees, administrators, and agents on how to properly handle sexual assault and battery, Title IX complaints, the issuance of No Contact Orders for students, reporting requirements and advisement of rights of rape victims, how to handle suicidal students, especially in light of prior known issues of sexual violence, rape, and suicide attempts on Defendant BARD's campus and as perpetrated against Defendant BARD students. Defendant BARD employees, administrators, and agents were not subject to any discipline or any additional

training as a result of the known issues pertaining to rape, sexual assault, and suicide attempts of students on campus.  Defendant BARD's duties were non-discretionary in nature.

89.    Defendant BARD breached the duties owed to Plaintiff JANE DOE as mentioned in paragraphs 1-46  in numerous ways, including failing to grant a No Contact Order on multiple occasions even after a known suicide attempt, failing to instruct her to report to the police department that she was a victim of sexual battery and to have a rape kit performed, failing to conduct an investigation when she initially reported the sexual battery, taking interim measures to ensure her physical and mental health and safety and to aide in her ability to participate in her education, in addition to many other breaches of said duties owed to Plaintiff JANE DOE.  Under VAWA, Defendant BARD was obligated to advise JANE DOE of her option to, or not to, notify and seek assistance from law enforcement and campus authorities, which did not occur. Defendant BARD was also required to inform JANE DOE of her rights and institutional responsibilities regarding judicial no-contact, restraining, and protective orders, which also failed to occur.  Such evidence demonstrates an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party injured have interests.  In particular, Defendant BARD's failure to grant Plaintiff JANE DOE a No Contact Order, while gratuitously offering one to Defendant JOHN DOE, her sexual perpetrator, is conduct that evinces reckless disregard for the rights of others or 'smacks' of intentional wrongdoing and/or was grossly negligent.  Furthermore, the fact that only after two additional victims, JANE DOE III and JANE DOE IV reported the same exact person for sexual misconduct and violence, did Defendant BARD finally grant a No Contact Order for Plaintiff JANE DOE and begin an investigation, is further evidence that Defendant BARD had a reckless disregard for the rights Plaintiff JANE DOE and that said behavior or 'smacks' of intentional wrongdoing and/or was grossly negligent.  Furthermore,

Defendant BARD's failure to handle prior incidents, the investigations by the United States Department of Justice, and the President's statements regarding sexual harassment and rape on campus was tantamount to deliberate or reckless indifference amounting to gross negligence.

90.     Defendant BARD also knew or should have known that its grossly negligent conduct unreasonably exposed Plaintiff JANE DOE to the obvious danger of being sexually assaulted, battered, harassed, stalked, and discriminated against based on her race and gender once more, and as a direct and proximate result of Defendant BARD's gross negligence, JANE DOE suffered damages and injuries for which Defendant BARD is liable.  Defendant BARD actually knew and/or should have known of the dangers posed by failing to ensure proper policies and procedures were in place, by failing to properly train, re-train and supervise its employees, administrators, and agents, and by negligently retaining the employment of same, and that it was reasonably foreseeable that said actions and inactions were likely to result in violations of Plaintiff JANE DOE's rights.  In addition, Defendant BARD actually knew and/or should have known of the dangers posed by failing to grant a No Contact Order and to conduct an investigation into allegations of sexual battery at the hands of another student, among the many other allegations Plaintiff JANE DOE brought to the attention of Defendant BARD.

91.     As a result of the breach of said duties, Defendant BARD actually and proximately caused the injuries and damages sustained by Plaintiff JANE DOE.

92.     As a result of the many breaches by Defendant BARD of its obligations and duties to their students to the ultimate detriment of Plaintiff JANE DOE, she suffered severe physical and psychological injuries and exacerbation of her predisposed genetic and otherwise disabling medical conditions.  Plaintiff JANE DOE also had to endure the fear and indignity of being sexually assaulted, battered, and harassed, stalked, and being discriminated against based on her

race and gender, after and as result of reporting misconduct to the appropriate Defendant BARD authorities.  Rather than having her rights protected by Defendant BARD, the institution took absolutely no appropriate, remedial actions on her behalf.  Instead, Plaintiff JANE DOE had to endure watching Defendant BARD White male student Defendant JOHN DOE, and similarly situated White female student JANE DOE IV easily receive the treatment and recourse that Plaintiff was also entitled to and was damaged as a direct result.  Plaintiff JANE DOE suffered panic attacks resulting in her having to be medicated, a suicide attempt, deterioration of her disabling medical conditions, both genetic and developing after she attended Defendant BARD, hostility in her classroom and amongst her peers, and dismissal of her concerns after reporting the same to Defendant BARD senior faculty members and administrators, and mandatory academic leave.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS by DEFENDANT BARD

93.    Plaintiff hereby incorporates paragraphs 1-46  as though fully set forth herein.

94.    This is an action brought against Defendant BARD pursuant to the laws of the state of New York for negligent and intentional infliction of emotional distress.

95.    A cause of action for negligent infliction of emotional distress generally requires Plaintiff "to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused her to fear for her own safety." *Graber v Bachman*, 27 A.D. 3d 986, 812 NYS2d 659 (2006); *Miller v. Chalom, 269 AD2d 37,*40710 NYS2d 154 (2000).

96.     At all times material hereto, Defendant BARD, was responsible for the actions and conduct of its employees and agents while in the course and scope of their employment with Defendant BARD. The above-referenced Defendant BARD Administrators, Title IX Administrators, Professors, Defendant BARD EMS, Defendant BARD Health Services staff were all employees and/or agents of Defendant BARD and acting within the course and scope of their employment with same, in furtherance of the interest of Defendant BARD, and with Defendant BARD's consent.

97.     As such, Defendant BARD is liable for all of its employees and/or agents' acts and omissions that gave rise to this action.

98.     Defendant BARD by and through its employees and agents, owed a duty to Plaintiff JANE DOE, to act in a prudent and reasonable manner with regard to her health, safety, and rights. Defendant BARD owed duty to provide responsible and effectively operate its college and administration including establishing proper policies, customs, and regulations of its various departments and for its employees and/or agents.   Defendant BARD owed a legal duty to supervise, discipline, and to properly train, and terminate employment if necessary, of its employees, administrators, and/or agents.

99.     Defendant BARD as landowner, tenant, and/or entity in control of the premise, had a duty to protect its tenants, invitees, and students from foreseeable harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk.  Especially in this instance wherein the relationships between a student and her teachers by and through her college.  Defendant BARD created the dangerous or defective condition by its failure to implement proper policies and procedures related to sexual assault and battery, by its President's irresponsible public statements about sexual

violence and women on campus, through its President's email to the student body regarding sexual assault and battery on campus, by and through the USDOJ's investigation into Defendant BARD for Title IX violations.

100.    Defendant BARD had actual knowledge that sexual assault and battery occurred on its campus, that problems existed with Title IX violations of its female students based on sex and gender, and did not correct the danger and issues but exacerbated them with irresponsible messages, by continuing to deny victims of sexual battery No Contact Orders, by failing to advise them of their rights, to report the crime and to have a rape kit performed, and by failing to conduct investigations into reported incidents.

101.    Defendant BARD breached the duties owed to Plaintiff JANE DOE as mentioned in paragraphs 1-46 in numerous ways including, failing to grant a No Contact Order on multiple occasions even after a known suicide attempt, failing to instruct her to report to the police department that she was a victim of sexual battery and to have a rape kit performed, failing to conduct an investigation when she initially reported the sexual battery, taking interim measures to ensure her physical and mental health and safety and to aide in her ability to participate in her education, in addition to many other breaches of said duties owed to Plaintiff JANE DOE. Under VAWA, Defendant BARD was obligated to advise Plaintiff JANE DOE of her option to, or not to, notify and seek assistance from law enforcement and campus authorities, which did not occur until approximately eight (8) months after she reported). Defendant BARD was also required to inform Plaintiff JANE DOE of her rights and institutional responsibilities regarding judicial no-contact, restraining, and protective orders, which also failed to occur, and the aforementioned breaches of the duties owed to Plaintiff JANE DOE unreasonably endangered her physical safety, and/ or caused her to fear for her own safety.

102.    Defendant BARD actually knew and/or should have known of the dangers posed by failing to ensure proper policies and procedures were in place, by failing to properly train, re-train and supervise its employees, administrators, and agents, and by negligently retaining the employment of same, and that it was reasonably foreseeable that said actions and inactions were likely to result in violations of Plaintiff JANE DOE's rights.  Prior to Plaintiff JANE DOE's sexual harassment, assault, sexual battery, stalking by this White male student Rapist, Defendant JOHN DOE, Defendant BARD created and/or did not deter sexual assault, battery, harassment and rape, making Defendant JOHN DOE's actions foreseeable and preventable and under New York law.

103.    As a result of the breach of said duties, Defendant BARD actually and proximately caused the injuries and damages sustained by Plaintiff JANE DOE.

104.    As a result of the many breaches by Defendant BARD of its obligations and duties to their students to the ultimate detriment of Plaintiff JANE DOE, she suffered severe physical and psychological injuries and emotional trauma, as well as exacerbation of her predisposed genetic and otherwise disabling medical conditions.  Plaintiff JANE DOE also had to endure the fear and indignity of being sexually assaulted, battered, and harassed, stalked, and being discriminated against based on her race and gender, after and as result of reporting misconduct to the appropriate Defendant BARD authorities.  Rather than having her rights protected by Defendant BARD, this institution took absolutely no appropriate, remedial actions on her behalf.  Instead, Plaintiff JANE DOE had to watch a White male student and similarly situated White female student easily receive the treatment and recourse that she was also entitled to and was damaged as a direct result.  Plaintiff JANE DOE suffered panic attacks resulting in her having to be medicated, a suicide attempt, deterioration of her disabling medical conditions, both genetic and developing after she attended Defendant BARD, hostility in her classroom and amongst her peers, and dismissal of her concerns

after reporting the same to Defendant BARD senior faculty members, and mandatory academic leave.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

### COUNT VI
### NEGLIGENCE of DEFENDANT BARD
### PREMISE LIABILITY

105. Plaintiff hereby incorporates paragraphs 1-46 as though fully set forth herein.

106. This is an action brought against Defendant BARD pursuant to the laws of the state of New York for negligence.

107. At all times material hereto, Defendant BARD, was responsible for the actions and conduct of its employees and agents while in the course and scope of their employment with Defendant BARD. The above-referenced Defendant BARD Administrators, Title IX Administrators, Professors, Defendant BARD EMS, Defendant BARD Health Services staff were all employees and/or agents of Defendant BARD and acting within the course and scope of their employment with same, in furtherance of the interest of Defendant BARD, and with Defendant BARD's consent.

108. As such, Defendant BARD is liable for all of its employees and/or agents' acts and omissions that gave rise to this action.

109. Defendant BARD by and through its employees and agents, owed a duty to Plaintiff JANE DOE, to act in a prudent and reasonable manner with regard to her health, safety, and rights. Defendant BARD owed duty to provide responsible and effective operations of its college and administration including establishing proper policies, customs, and regulations of its various

departments and for its employees and/or agents.   Defendant BARD owed a legal duty to supervise, discipline, and to properly train, and terminate employment if necessary, of its employees, administrators, and/or agents.   Defendant BARD as landowner, tenant, and/or entity in control of the premise, had a duty to protect its tenants, invitees, and students from foreseeable harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk.   Especially in this instance wherein the relationships between a student and her teachers by and through her college. Defendant BARD created the dangerous or defective condition by its failure to implement proper policies and procedures related to sexual assault and battery, by its President's irresponsible public statements about sexual violence and women on campus, through its President's email to the student body regarding sexual assault and battery on campus, by and through the USDOJ's investigation into Defendant BARD for Title IX violations.   Defendant BARD had actual knowledge that sexual assault and battery occurred on its campus, that problems existed with Title IX violations of its female students based on sex and gender, and did not correct the danger and issues but exacerbated them with irresponsible messages, by continuing to deny victims of sexual battery No Contact Orders, by failing to advise them of their rights, to report the crime and to have a rape kit performed, and by failing to conduct investigations into reported incidents.

110.   Upon information and belief and as cited supra, prior to the sexual assault and battery of Plaintiff JANE DOE, Defendant BARD had a custom or policy of failing to properly train, retrain, supervise, and discipline employees, administrators, and agents on how to properly handle sexual assault and battery, Title IX complaints, the issuance of No Contact Orders for students, reporting requirements and advisement of rights of rape victims, how to handle suicidal students, especially in light of prior known issues of sexual violence, rape, and suicide attempts on

Defendant BARD's campus and as perpetrated against Defendant BARD students.  Defendant BARD employees, administrators, and agents were not subject to any discipline or any additional training as a result of the known issues pertaining to rape, sexual assault, and suicide attempts of students on campus.  Defendant BARDS duties were non-discretionary in nature.

111.    Defendant BARD breached the duties owed to Plaintiff JANE DOE as mentioned in paragraphs 1-46 in numerous ways including, failing to grant a No Contact Order on multiple occasions even after a known suicide attempts, failing to instruct her to report to the police department that she was a victim of sexual battery and to have a rape kit performed, failing to conduct an investigation when she initially reported the sexual battery, taking interim measures to ensure her physical and mental health and safety and to aide in her ability to participate in her education, in addition to many other breaches of said duties owed to Plaintiff JANE DOE.  Under VAWA, Defendant BARD was obligated to advise Plaintiff JANE DOE of her option to, or not to, notify and seek assistance from law enforcement and campus authorities, which did not occur until approximately eight (8) months after she reported).  Defendant BARD was also required to inform Plaintiff JANE DOE of her rights and institutional responsibilities regarding judicial no-contact, restraining, and protective orders, which also failed to occur.

112.    Defendant BARD actually knew and/or should have known of the dangers posed by failing to ensure proper policies and procedures were in place, by failing to properly train, re-train and supervise its employees, administrators, and agents, and by negligently retaining the employment of same, and that it was reasonably foreseeable that said actions and inactions were likely to result in violations of Plaintiff JANE DOE's rights.  Prior to Plaintiff JANE DOE's sexual harassment, assault, sexual battery, stalking by this White male student Rapist, Defendant JOHN DOE, Defendant BARD created and/or did not deter sexual assault, battery, harassment and rape,

45

making Defendant JOHN DOE's actions foreseeable and preventable and under New York law, as the property owner and/or occupant, and/or entity in control of the college campus premises.

113.     As a result of the breach of said duties, Defendant BARD actually and proximately caused the injuries and damages sustained by Plaintiff JANE DOE.

114.     As a result of the many breaches by Defendant BARD of its obligations and duties to their students to the ultimate detriment of Plaintiff JANE DOE, she suffered severe physical and psychological injuries and exacerbation of her predisposed genetic and otherwise disabling medical conditions.  Plaintiff JANE DOE also had to endure the fear and indignity of being sexually assaulted, battered, and harassed, stalked, and being discriminated against based on her race and gender, after and as result of reporting misconduct to the appropriate Defendant BARD authorities.  Rather than having her rights protected by Defendant BARD, this institution took absolutely no appropriate, remedial actions on her behalf.  Instead, Plaintiff JANE DOE had to watch a White male student and similarly situated White female student easily receive the treatment and recourse that she was also entitled to and was damaged as a direct result.  Plaintiff JANE DOE suffered panic attacks resulting in her having to be medicated, a suicide attempt, deterioration of her disabling medical conditions, both genetic and developing after she attended Defendant BARD, hostility in her classroom and amongst her peers, and dismissal of her concerns after reporting the same to Defendant BARD senior faculty members, and mandatory academic leave.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT VII
## TITLE IX VIOLATIONS by DEFENDANT BARD

## GENDER/SEX DISCRIMINATION, HOSTILE ENVIRONMENT

115.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

116.    This is an action brought against Defendant BARD for unlawful discrimination based on gender and/or sex, for sexual battery and sexual harassment in the educational context, and for the creation of a hostile educational environment against Defendant BARD, pursuant to Title IX 28 U.S.C. Section 1331 and 1343.

117.    Defendant BARD is a recipient of federal funding, is therefore bound to govern itself by Title IX of the Education Amendments of 1972, which states: "no person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

118.    As aforementioned, a hostile environment for women existed on Defendant BARD's campus when Plaintiff JANE DOE began as a college freshman, and sexual harassment, assault, and battery, was condoned from the top-down and not penalized as evidenced by the Defendant BARD College President's statements and the numerous Title IX investigations performed by the USDOJ and USDOE.  During Plaintiff JANE DOE's attendance of Defendant BARD, its other students, and its employees and agents acting in the course and scope of their employment with Defendant BARD, subjected Plaintiff JANE DOE to unwelcome, offensive, humiliating, threatening and degrading sexual comments and treatment, sexual battery and assault, stalking, harassment, and discrimination based on her gender and/or sex, thereby creating a hostile environment.  To wit, Defendant BARD employees, officials, faculty, and agents were placed on actual notice by Plaintiff JANE DOE that she was subject to sexual harassment, assault, sexual battery, stalking, harassment, and racial discrimination; and, Defendant BARD was deliberately

indifferent to these known acts of student-on-student sexual harassment and misconduct. The student that committed the above crimes and bad acts directed at Plaintiff JANE DOE was directly under its disciplinary authority. Plaintiff JANE DOE began reporting these incidents to Defendant BARD as early as September 29, 2015. Defendant BARD created an environment of pervasive student-on-student sexual harassment and sexual violence as it: acted with deliberate indifference to known acts of harassment in its programs or activities; and the harassment at issue is so severe, pervasive, and objectively offensive that it completely limited Plaintiff JANE DOE's access to educational opportunities and benefits. Defendant BARD, once placed on notice of gender based, peer-on-peer misconduct towards Plaintiff JANE DOE exercised deliberate indifference to harassment resulting in both a decreased educational opportunity and a hostile environment. Plaintiff JANE DOE subjectively perceived the environment created at Defendant BARD to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her educational environment.

119. Plaintiff JANE DOE was subjected to the sexually intimidating, hostile, offense and anti-female atmosphere created and maintained by Defendant BARD was unreasonably affected in a "term, condition, and privilege" of her education as envisioned by Title IX; in that: Plaintiffs physical and psychological well-being was affected; her ability to obtain her education was affected; and the educational setting became hostile.

120. The sexually hostile and gender-based hostile environment to which plaintiff has been subjected was based upon her gender and sex, upon her being female and a woman. The harassment was so severe, pervasive, and objectively offensive that it altered her education; school district had actual notice of gender-based harassment; and the school was deliberately indifferent

to it.   Defendant JOHN DOE's harassment of Plaintiff was so severe, pervasive, and objectively offensive that it altered the education of this disabled student, resulting in panic attacks and a suicide attempt.   Plaintiff JANE DOE suffered for approximately eight (8) months without protection after being denied a No Contact Order several times even after an attempted suicide, and Defendant BARD failed to conduct an investigation.   Yet the White male student Defendant JOHN DOE, that attended Defendant BARD's institution was offered a No Contact Order at the mere suggestion of misconduct by another male student.

121.   Defendant BARD's 2015-2016 *Harassment, Discrimination and Stalking Policy* promises its students that "[d]iscrimination and harassment of any kind, will not be tolerated…" The 2015-2016 Gender-Based Misconduct Policy states in relevant part that: "The College will respond to **_all_** alleged incidents of gender-based misconduct, inclusive of sexual harassment, gender-based harassment, nonconsensual sexual intercourse, nonconsensual sexual contact, intimate partner violence, stalking, and sexual exploitation reported to have occurred: on campus; off campus involving members of the BARD community…" *(emphasis added)*

122.   Defendant BARD's written policies demonstrate a knowledge and undertaking to ensure that it will respond to failures to comply with Title IX and its failure to abide by its own written policies is clear evidence of its deliberate indifference to Plaintiff JANE DOE, even after she reported and provided actual notice of sexual misconduct, sexual harassment, nonconsensual sexual intercourse, nonconsensual sexual contact, intimate partner violence, stalking, and gender discrimination.   Defendant BARD's policies had to be rewritten due to its inherent deficiencies and non-compliance with Title IX standards as proscribed by federal law.   Defendant BARD failed to have proper policies, procedures, training, supervision, and oversight in place to ensure that its

employees, administrators, agents, Heath Services, and EMS complied with its obligations under Title IX.

123.    Defendant BARD's administrators responded to Plaintiff JANE DOE with deliberate indifference despite being advised of all of the above and having actual notice of what transpired responded with hostile communications including but not limited to Dean Timand's response  that Plaintiff JANE DOE was merely seeking excused absences, that she "*cannot be excused regardless of reason*…," her professors accusation that she flirted with deadlines, and Plaintiff's ultimate dismissal from Defendant BARD after the investigation commenced created a deliberately indifferent and hostile environment. The conduct of Defendant BARD deprived Plaintiff JANE DOE of her statutory rights under Title IX and was in reckless disregard of her federally protected right to be free from such conduct and treatment in the educational setting.

124.    As a direct, material, proximate and foreseeable result of Defendant BARD's actions (and inactions), Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT VIII
## TITLE IX VIOLATION by DEFENDANT BARD
## RETALIATION

125.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

126.    This is an action brought against Defendant BARD for unlawful retaliation against Plaintiff JANE DOE for the assertion of her rights under Title IX.

127.    Defendant BARD is a recipient of federal funding, is therefore bound to govern itself by Title IX of the Education Amendments of 1972, which states: "no person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

128.    Plaintiff JANE DOE reported the sexual harassment, sex/gender discrimination, and sexual assault at the hands of another Defendant BARD student, which constituted participation in enforcing a federally protected right Under Title IX.

129.    Subsequent thereto, Plaintiff JANE DOE was denied a No Contact Order on more than one occasion, the Title IX office refused to conduct an investigation into said incident, took adverse actions against her and instead penalized Plaintiff JANE DOE in numerous ways as enumerated above.  Defendant BARD's failure to grant a No Contact Order and/or commence an investigation into Defendant JOHN DOE's behavior thereby ratified his misconduct and subjected Plaintiff JANE DOE to continued harassment, stalking, and discrimination at the hands of Defendant JOHN DOE, a White male student.  Defendant BARD's refusal to take action also endangered other female students which led to the sexual harassment and/or assault of two more female students by the same Defendant JOHN DOE.  Defendant BARD's professors and administrators harassed Plaintiff JANE DOE, and ultimately removed her from Defendant BARD's academic programs placing her on mandatory academic leave and later reinstated her interfering with her ability to obtain her education and possibly prolonging her graduation date.

130.    Defendant BARD's denial of such opportunity to Plaintiff JANE DOE constitutes adverse educational action prohibited by Title IX and is causally connected to the statutorily

protected participation in which she had engaged.  Defendant BARD's failure to provide Plaintiff JANE DOE with the necessary protections afforded her under Title IX as well as by minimalizing, trivializing, and acting with deliberate indifference and ultimately forcing her to suspend her academic studies, was an attempt to silence Plaintiff JANE DOE for reporting Title IX violations to multiple Defendant BARD agents, employees and/or representatives. Defendant BARD's actions and omissions are the actual and proximate causes of Plaintiff JANE DOE's injuries for which Defendant BARD is liable.

131.    As a direct and proximate result of Defendant BARD's illegal retaliation against Plaintiff JANE DOE she has incurred damages including, but not limited to: a delayed graduation date, severe emotional and psychological injury, lost tuition and expense monies.

WHEREFORE, Plaintiff JANE DOE demands judgment against Defendant BARD for reinstatement, reimbursement of educational expenses, compensatory damages, punitive damages, pre-judgment interest, attorney's fees, costs of this action, injunctive relief, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs, and such other and further relief as the Court deems just and proper.

## COUNT IX

### DEFENDANT BARD COLLEGE'S RACIAL DISCRIMINATION AGAINST PLAINTIFF JANE DOE IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

132.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

133.    Title VI of the Civil Rights Act of 1964 provides in pertinent part that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. §2000d.

134.    Defendant BARD is a recipient of federal funding and is therefore bound to govern itself in accordance with the rules and regulations set forth in Title VI of the Civil Rights Act of 1964.

135.    Despite being a recipient of federal funding, Defendant BARD engaged in prohibited racial discrimination against Plaintiff JANE DOE to wit: although Plaintiff JANE DOE reported her assailant, a White male student's racial discrimination, stalking, sexual harassment, assault, and battery to Defendant BARD's health practitioners, Title IX coordinator, and professors. In response to Plaintiff JANE DOE's reporting Defendant BARD ignored this African American female until approximately eight (8) months after receiving actual notice of the aforementioned incidents, denying her a No Contact Order on several occasions and did not commence an investigation.  During this time as stated above Defendant BARD gratuitously offered Defendant JOHN DOE, a White male student, a No Contact Order against another male student.

136.    Despite receiving actual notice from Plaintiff JANE DOE Defendant BARD ignored and continued to ignore Plaintiff JANE DOE's reports of racial discrimination, stalking, sexual harassment, assault, and battery by this White male student, in violation of Title VI of the Civil Rights Act of 1964, and it was *only after* a similarly situated White female student JANE DOE IV reported similar Title IX violations by the very same White male student, did Defendant BARD take any action and finally began an investigation into Defendant JOHN DOE, a White male student, and finally granted Plaintiff Jane Doe a No Contact Order.  Defendant BARD's

conduct actually and proximately caused Plaintiff JANE DOE to suffer from mental, physical, and psychological injuries and damages for which Defendant BARD is liable.

137.    Defendant BARD's actions and omissions were racially discriminatory in nature towards Plaintiff JANE DOE and this disparate treatment of Plaintiff JANE DOE by Defendant BARD was to the detriment of Plaintiff JANE DOE in violation of her rights under Title VI of the Civil Rights Act.

138.    As a direct, material, proximate and foreseeable result of Defendant BARD's actions and inactions, Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT X

### DEFENDANT BARD'S DELIBERATE INDIFFERENCE TO RACIAL DISCRIMINATION OF PLAINTIFF JANE DOE IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

139.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

140.    Plaintiff JANE DOE reported to Defendant BARD on numerous occasions that her assailant, a White male student used the "N" word and commented about Plaintiff JANE DOE's African American heritage and body on numerous occasions. Plaintiff JANE DOE reported this White male student's racial discrimination, stalking, sexual harassment, assault, and battery to Defendant BARD, placing Defendant BARD on actual notice of this misconduct. Despite Plaintiff

JANE DOE providing actual notice, Defendant BARD's agents and/or employees chose instead to ignore Plaintiff JANE DOE's reporting due to her race.

141.    Defendant BARD refused to investigate, report, or provide Plaintiff JANE DOE with a No Contact Order until a White female also fell victim to this White male student's sexual misconduct. Further, Defendant BARD *offered* this White male student, Defendant JOHN DOE a No Contact Order for an unrelated incident the very same day he reported misconduct by another student.  It is clear that this disparate treatment was based on Plaintiff JANE DOE's race was in violation of Title VI of the Civil Rights Act of 1964.

142.    Plaintiff JANE DOE reported Defendant JOHN DOE, this White male student's multiple acts of misconduct to Defendant BARD yet this federally funded institution recipient was deliberately indifferent to Plaintiff JANE DOE's reporting of this misconduct.

143.    Defendant BARD's deliberate indifference to this White male student's stalking, racial discrimination, sexual assault, harassment, and battery of Plaintiff JANE DOE after receiving actual notice on multiple occasions was so severe, pervasive, and objectively offensive that it caused Plaintiff JANE DOE to suffer physical and psychological injuries that, in addition to the vaginal tearing suffered at the hands of this White male student, also manifested as panic attacks, a suicide attempt, missed classes, and mandatory academic leave, ultimately depriving Plaintiff JANE DOE, a disabled African American student, of educational benefits and opportunities provided by Defendant BARD.

144.    Defendant BARD had actual knowledge of this racially discriminatory conduct yet immediately and continuously demonstrated deliberate indifference to these known instances of student-on-student racial harassment because of Plaintiff JANE DOE's race by failing to take any actions whatsoever until eight (8) months after the incidents were reported. Defendant BARD's

failure to investigate this White male student's misconduct, conduct any disciplinary proceedings, or contact Plaintiff JANE DOE and offer any assistance or resources was clearly unreasonable.

145.    Defendant BARD's deliberate indifference to the racial discrimination suffered by Plaintiff JANE DOE was and is in violation of Title VI of the Civil Rights Act, and Defendant BARD's racially biased and prohibited acts and omissions caused Plaintiff JANE DOE to suffer mental and psychological injuries and damages for which Defendant BARD is the actual and proximate cause and therefore liable.  Defendant BARD'S deliberate indifference to exposed Plaintiff JANE DOE to continued racial discrimination and sexual harassment which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, on campus events and activities, and Defendant BARD's college program.

146.    As a direct, material, proximate and foreseeable result of Defendant BARD's actions and inactions, Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT XI
## TITLE VI VIOLATION
## RETALIATION BY DEFENDANT BARD

147.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46 as though fully set forth herein.

148.    This is an action brought against Defendant BARD for unlawful retaliation against Plaintiff JANE DOE for the assertion of her rights under Title VI.

149.    Defendant BARD is a recipient of federal funding, is therefore bound to govern itself by Title VI which prohibits discrimination based on race.  Plaintiff JANE DOE reported racial discrimination at the hands of another Defendant BARD student, which constituted participation in enforcing a federally protected right Under Title VI.

150.    Subsequent thereto, Plaintiff JANE DOE was denied a No Contact Order on more than one occasion, the Title IX office refused to conduct an investigation into said incident, took adverse actions against her and instead penalized Plaintiff JANE DOE in numerous was as enumerated above.  Defendant BARD's failure to grant a No Contact Order and/or commence an investigation into Defendant JOHN DOE's behavior thereby ratified his misconduct and subjected Plaintiff JANE DOE to continued harassment, stalking, and discrimination at the hands of Defendant JOHN DOE, a White male student.  Furthermore, Defendant BARD gratuitously offered Defendant JOHN DOE, a White male student a No Contact Order during the same time period against another male student while denying Plaintiff JANE DOE on multiple occasions. Furthermore, a second Palestinian female student JANE DOE III reported Defendant JOHN DOE, for misconduct and Plaintiff JANE DOE was still not granted a No Contact Order and no investigation ensued.  Plaintiff JANE DOE did not receive a No Contact Order and an investigation did not begin until eight (8) months later, when a similarly situated White female student JANE DOE IV reported misconduct against Defendant JOHN DOE.  Defendant BARD's refusal to take action also endangered other female students and led to the sexual harassment and/or assault of two more female students by the same White male student Defendant JOHN DOE.  Defendant BARD's professors and administrators harassed Plaintiff JANE DOE, and ultimately removed her

from Defendant BARD's academic programs placing her on mandatory academic leave and later reinstated her interfering with her ability to obtain her education and possibly prolonging her graduation date.

151.    Defendant BARD's denial of such opportunity to Plaintiff JANE DOE constitutes adverse educational action prohibited by Title VI and is causally connected to the statutorily protected participation in which she had engaged.  Defendant BARD's failure to provide Plaintiff JANE DOE with the necessary protections afforded her under Title VI as well as by minimalizing, trivializing, and acting with deliberate indifference and ultimately forcing her to suspend her academic studies, was an attempt to silence Plaintiff JANE DOE for reporting Title VI violations to multiple Defendant BARD agents, employees and/or representatives. Defendant BARD's actions and omissions are the actual and proximate causes of Plaintiff JANE DOE's injuries for which Defendant BARD is liable.

152.    As a direct and proximate result of Defendant BARD's illegal retaliation against Plaintiff JANE DOE she has incurred damages including, but not limited to: a delayed graduation date, severe emotional and psychological injury, lost tuition and expense monies.

WHEREFORE, Plaintiff JANE DOE demands judgment against Defendant BARD UNIVERSITY for reinstatement, reimbursement of educational expenses, compensatory damages, punitive damages, pre-judgment interest, attorney's fees, costs of this action, injunctive relief, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs, and such other and further relief as the Court deems just and proper.

## COUNT XII

## DEFENDANT BARD'S VIOLATION OF SECTION 504 OF THE 1973 REHABILITATION ACT

153.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46  as though fully set forth herein.

154.    This is an action brought against Defendant BARD for its violation of §504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101.

155.    Defendant BARD is an entity that receives federal financial assistance and is a covered entity for purposes of Section 504, is prohibited from discriminating against any "qualified individual with a disability" and Defendant BARD was obligated to make reasonable accommodations for Plaintiff JANE DOE, which it did not.

156.    Plaintiff JANE DOE was at all times material hereto a qualified individual with a disability and her specific disabilities are: Ehlerseanlos Disorder, fibromyalgia, osteoarthritis, hypermobility, and chronic joint pain all of which substantially limits one or more of her major life activities and/or major bodily functions.

157.    The key factor in determining whether a person is considered an "individual with handicaps" covered by Section 504 is whether the physical or mental impairment results in a substantial limitation of one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  Plaintiff JANE DOE's disabilities of Ehlerseanlos Disorder, fibromyalgia, osteoarthritis, hypermobility, and chronic joint pain have all substantially limited one or more of her major life activities and/or major bodily functions.

158.    Defendant BARD violated section 504 of the Rehabilitation Act with a malicious intent or with a reckless and callous indifference to Plaintiff JANE DOE's rights, safety and well-being by denying each and every one of Plaintiff JANE DOE's attempts for help after she reported

multiple instances of misconduct by this White male student on numerous occasions, yet offered non-disabled students, namely a White female who was also a victim of this White male student full protections afforded under state and federal laws as well as Defendant BARD's policies and procedures once this White male student's misconduct was reported.

159.   As a direct, material, proximate and foreseeable result of Defendant BARD's actions and inactions, Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT XIII
## DEFENDANT BARD'S VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

160.   Plaintiff JANE DOE hereby incorporates paragraphs 1-46  as though fully set forth herein.

161.   The Americans with Disabilities Act was created "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1). Plaintiff JANE DOE was at all material times an individual with disabilities within the meaning of 42 U.S.C. §12102, *et seq.*

162.   Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a).

Defendant BARD was aware of Plaintiff JANE DOE's disabilities, and Plaintiff JANE DOE provided Defendant BARD with notice of her unnamed medical disabilities, and later received her specific diagnosis of Ehlerseanlos Disorder, fibromyalgia, osteoarthritis, hypermobility, and chronic joint pain while attending Defendant BARD's program.

163.    Under Title III of the ADA, Defendant BARD must make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals …" 42 U.S.C. §12182(b)(2)(A)(ii).

164.    Under the ADA, Defendant BARD had and has a duty to ensure that Plaintiff JANE DOE was and is treated as any non-disabled student.  Plaintiff JANE DOE's disabilities continue to have material effects on Plaintiff JANE DOE's ability to perform major life activities, so it was and is of the utmost importance that armed with that knowledge of Plaintiff JANE DOE's disability that Defendant BARD properly assess and address Plaintiff JANE DOE's multiple instances of reporting this White male student's misconduct and respond to these complaints as it would any non-disabled student, which did not occur.

165.    Despite having actual knowledge that Plaintiff JANE DOE was disabled, Defendant BARD denied each and every one of Plaintiff JANE DOE's attempts for help, but offered non-disabled students, namely a White female student who was also a victim of this White male student's misconduct, full protections afforded under state and federal laws as well as Defendant BARD's policies and procedures once this misconduct was reported.

166. Plaintiff JANE DOE, rather than being protected, was instead dismissed and ignored, with her reports of misconduct going unreported and uninvestigated until eight (8) months later. Plaintiff JANE DOE was made to endure the race and sex-based hostility of both students and teachers alike, with her specific diagnoses being shared amongst Defendant BARD faculty and staff members.

167. Defendant BARD failed to make reasonable accommodations for Plaintiff JANE DOE, which caused her disabilities to not only became worse, but caused and exacerbated panic attacks that might have otherwise been able to be overcome without medication. Defendant BARD's faculty and administrators also sent her insulting and derogatory communications regarding her disabilities.

168. As a result of Defendant BARD's failure to comply with the ADA, Plaintiff JANE DOE's physical disabilities, declining mental health, and panic attacks all resulted in Plaintiff JANE DOE missing classes due to her having to adjust to being medicated for these panic attacks. Once placed on notice of these developments, rather than make reasonable accommodation under the ADA, Defendant BARD's response was harsh words of criticism and placing Plaintiff JANE DOE on involuntary, mandatory academic leave.

169. Defendant BARD undertook the duty to protect Plaintiff JANE DOE from sexual harassment, assault, battery, stalking, and racial and gender discrimination suffered at the hands of its students and employees and comply with the ADA. Defendant BARD's actions and omissions however were based on and were in complete disregard to Plaintiff JANE DOE's status as a disabled individual and in clear violation of the Americans with Disabilities Act. Therefore, Defendant BARD is liable for the damages caused Plaintiff JANE DOE due to its violations of federal law.

170.    As a direct, material, proximate and foreseeable result of Defendant BARD's actions and inactions, Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT XIV
## DEFENDANT BARD'S BREACH OF CONTRACT

171.    Plaintiff JANE DOE hereby incorporates paragraphs 1-46  as though fully set forth herein.

172.    As a material inducement to persuade Plaintiff JANE DOE to attend Defendant BARD'S institution, Defendant BARD made material representations via its Student Handbook and enrollment materials with promises to extend numerous protections to Plaintiff JANE DOE in consideration for her attending its institution.

173.    Defendant BARD's Student Handbook states that behavior that violates policies articulated in the Student Handbook or in the Defendant BARD College Catalogue is not accepted and formal procedures may be initiated in accordance with the Student Handbook.  Additional BARD policies are set forth in its ***Harassment, Discrimination and Stalking Policy***.  Defendant BARD's 2015-2016 Gender-Based Misconduct Policy states in relevant part:

**1. NOTICE OF NONDISCRIMINATION**
Bard College is committed to ensuring equal access to its educational programs and equal employment without regard to an individual's sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status, or any other

characteristic protected by federal, state, or local law. Students, employees, applicants, and other members of Bard College community (including, but not limited to, vendors, visitors, and guests) shall not be subject to discrimination or harassment prohibited by law or otherwise treated adversely based upon a protected characteristic. Similarly, the College will not tolerate harassing, violent, intimidating, or discriminatory conduct by its students, employees, or any other member of, or visitor to, the College community. This includes, without limitation, sexual harassment, sexual assault, sexual violence, dating violence, and domestic violence.

## 2. POLICY STATEMENT

Bard's gender-based misconduct policy is in accordance with federal and state laws and regulations prohibiting discrimination and harassment, as well as provisions of response and services for victims of interpersonal violence. These laws include: Title IX, Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, Section 304 of the Violence Against Women Reauthorization Act and New York State Enough Is Enough legislation. These laws and the College prohibit discrimination and harassment, including gender-based misconduct. Bard College and its affiliated programs are committed to providing a learning environment free from sexual and gender-based harassment, discrimination, and assault (hereafter referred to as gender-based misconduct).

Bard College is committed to preventing, responding to, and remedying occurrences of gender-based misconduct. To that end, the College provides services and advocacy support for individuals who have been impacted by gender-based misconduct, as well as accessible, prompt, and thorough methods of investigation and resolution of incidents of gender-based misconduct.

Additionally, the College provides educational and preventative programs for employees and students throughout the academic year that promote awareness of intimate partner violence, sexual assault, and stalking. These include: primary prevention and awareness, definitions of domestic and intimate partner violence, dating violence, sexual assault, stalking, consent, bystander intervention techniques and safe practices, and risk reduction in the form of recognizing warning signs and how to avoid unwelcome interaction.

The gender-based misconduct policy should be interpreted and applied in a manner consistent with the principles of free inquiry,

free expression, and free speech to which Bard College is committed. The College's policy against discrimination, harassment, gender-based misconduct, and retaliation is not intended to stifle these freedoms. Prohibited discrimination, harassment, and retaliation are neither legally protected expression nor the proper exercise of academic freedom.

### 3. SCOPE OF POLICY

The College will respond to all alleged incidents of gender-based misconduct, inclusive of sexual harassment, gender-based harassment, nonconsensual sexual intercourse, nonconsensual sexual contact, intimate partner violence, stalking, and sexual exploitation reported to have occurred:

- on campus;
- off campus involving members of the Bard community;
- through social media or other online interactions involving members of the Bard community, particularly if campus safety is affected;
- during official Bard programs, regardless of location.

Action taken and support provided regarding incidents of misconduct involving contract employees, visitors, and guests may be limited; however, the College will endeavor to respond, sanction and/or remedy to the extent possible, practical, and reasonable.

### 4. DEFINITIONS OF GENDER-BASED MISCONDUCT

**Sexual Harassment:** Sexual harassment is defined as unwelcome, sexually based verbal, written, visual, or physical conduct. Sexual harassment creates a hostile environment, and may be disciplined when it is sufficiently severe, persistent, or pervasive that it:

- has the effect of unreasonably interfering with, denying, or limiting employment opportunities or the ability to participate in or benefit from the College's educational, social, and/or residential program; and/or is
- based on power differentials (quid pro quo), the creation of a hostile environment, or retaliation.

**Gender-Based Harassment:** Acts of verbal, nonverbal, or physical aggression, intimidation, stalking, or hostility based on gender or gender stereotyping constitute gender-based harassment. Gender-based harassment can occur if persons are harassed either for exhibiting what is perceived as a stereotypical characteristic for their sex, or for failing to conform to stereotypical notions of masculinity or femininity. In order to constitute harassment, the conduct must be severe, persistent, and/or pervasive, such that it has the effect of unreasonably interfering with an individual's academic

or employment performance or creating an intimidating, hostile, or offensive academic, living, or working environment.

**Intimate Partner Violence (inclusive of domestic and dating violence):** The willful intimidation, economic control, manipulation, humiliation, isolation, coercion, threat of or actual physical harm as part of a systematic pattern of power and control perpetrated by one intimate partner against another. It includes physical violence, sexual violence, psychological violence, and emotional abuse. Intimate partner violence can be a single act or a pattern of behavior in a relationship. Intimate partner relationships are defined as short- or long-term relationships (current or former) between persons, intended to provide some emotional, romantic, and/or physical intimacy.

**Stalking:** A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

**Sexual Misconduct:**
**Nonconsensual Sexual Intercourse:** Any form of sexual intercourse (anal, oral, or vaginal), however slight, with any object or body part, upon any person, that is by force and/or without consent. Intercourse is defined as anal, oral, or vaginal penetration by an inanimate object or another's body part.

**Nonconsensual Sexual Contact:** Any intentional sexual touching, however slight, with any object or body part, upon any person, that is by force and/or without a person's consent. Intentional sexual conduct may include contact with the breasts, buttocks, groin, or touching another with any of these body parts, or making another person touch any of these body parts; any intentional bodily contact of a sexual manner.

**ADDITIONAL DEFINITIONS**
**Consent:** Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or

gender expression.  Consent may be initially given but withdrawn at any time.  Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by a lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent.  Consent cannot be given when it is the result of coercion, intimidation, force, or threat of harm. When consent is withdrawn or can no longer be given, sexual activity must stop.

**Retaliation:** To take an adverse action against an individual or subject an individual to conduct that has the purpose or effect of unreasonably interfering with that individual's educational experience, work or academic performance, or creates an educational experience or academic or work environment that a reasonable person would find intimidating or hostile because of something that individual did to apply this policy. This may include complainants, respondents, witnesses, and other reporting persons.

## 8. FORMAL REPORTING
### a. Institutional Report
Any member of the community who wishes to file a report for gender-based misconduct may do so by following the procedures outlined below. Any responsible employee with knowledge of gender-based misconduct occurring among members of the Defendant BARD community must contact the Title IX Office to file a report. Individuals who wish to submit a report, or have questions regarding the reporting procedures for gender-based misconduct, may meet in person or talk by telephone with the Title IX Coordinator, or designee, to discuss the process, policies, resources, their institutional rights, as well as rights for reporting to the local authorities. They may also discuss options for no-contact notices through the College or local law enforcement and orders of protection through the court system. When information pertaining to specific incidents of alleged gender-based misconduct is shared, the Title IX Office will attempt to protect the privacy of all parties involved but is required to initiate a preliminary inquiry and determine what, if any, further investigation is warranted. However, this does not mean a formal investigation is automatically initiated.

### d. Criminal Report
Individuals have the right to decide whether or not to file a report with the New York State Police or the local enforcement agency where the misconduct occurred. The Title IX Coordinator is available to assist individuals in the process of reporting criminal complaints.  Red Hook Police Department (845-758-0060)

**9. INSTITUTIONAL INVESTIGATION PROCEDURES**

Student reports of gender-based misconduct will be investigated in a thorough, reliable, impartial, and prompt fashion, with the goal of completing the process as expeditiously as possible and the intention to complete same within 60 days of notice to the institution, if possible…

**13. INTERIM MEASURES**

Individuals who have been involved in an incident of gender-based misconduct have a right, regardless of their decision to file a formal complaint, to request interim measures such as: restrictions on contact between the complainant and respondent; restrictions from areas on campus; removal or relocation from residential areas, classroom environments, or employment locations; temporary suspensions (of respondents); academic accommodations in the form of tutoring, independent study, or course withdrawal without academic penalty.

**Disability Accommodations**

Students seeking accommodations for a disability in connection with this process should contact the Disability Services Office.

**15. STUDENTS BILL OF RIGHTS**

All students have the right to: Make a report to local law enforcement or state police; Have disclosures of domestic violence, dating violence, stalking, and sexual assault taken seriously; Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the institution; Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard; Be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available; Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed or should have acted in a different manner to avoid such crimes or violations; Describe the incident to as few institution representatives as practicable and not be required to unnecessarily repeat a description of the incident; Be protected against retaliation by the College, any student, the accused and/ or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the College.

**Defendant BARD's Harassment, Discrimination and Stalking Policy*** states in relevant part:

*Concerns of gender-based harassment, discrimination or stalking should refer to the Gender Based Misconduct policy and procedures. Discrimination and harassment of any kind, will not be tolerated. Those believing that they have been unlawfully harassed or discriminated against on the basis of their sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-offender status, should contact the Dean of Student Affairs Office, Human Resources, or Office of Safety and Security.

**Discrimination**
Discrimination is the unlawful and intentional act of unfair treatment of a person based sex, gender, race, color, national origin, religion, age, disability, gender identity, sexual orientation, predisposing genetic characteristics, marital status, veteran status, military status, domestic violence victim status, ex-or offender status.

**Harassment**
Unwelcome, hostile, or inappropriate conduct directed toward an individual because of their protected status. Such conduct violates College policy if it (1) has the purpose or effect of creating an intimidating, hostile, or offensive working, living, or learning environment for the affected individual, or (2) substantially interferes with that individual's working, living, or learning environment. This can include persistent comments or jokes about an individual's religion, race, age, or gender; verbal behavior, including insults, remarks, epithets, or derogatory statements directed at an individual or group; nonverbal behavior, including graffiti, inappropriate physical advances short of physical violence; and assault, including physical violence or the threat of physical violence.

**Stalking**
A course of conduct directed at a specific person that would cause a reasonable person to feel fear. Stalking behaviors may include pursuing or following, unwanted or nonconsensual communication or contact (including in-person contact, telephone or voice messages, electronic messages, social media messages, and text messages), unwanted gifts, trespassing, surveillance, and other types of observation.

69

**Retaliation**
To take an adverse action against an individual or subject an individual to conduct that has the purpose or effect of unreasonably interfering with that individual's educational experience, work or academic performance, or creates an educational experience or academic or work environment that a reasonable person would find intimidating or hostile because of something that individual did to further this policy. This may include complainants, respondents, witnesses, and other reporting persons.

174.     Defendant BARD's Student Handbook specifically and expressly prohibits the exact same racial and sex discrimination, sexual assault, battery, harassment, and stalking, and discrimination based on Plaintiff JANE DOE's predisposed genetic characteristics and disabilities suffered by her, and by virtue of this Student Handbook, Defendant BARD was obligated to protect Plaintiff JANE DOE's safety.

175.     Defendant BARD promised that it would investigate and provide services to Plaintiff JANE DOE in order to remedy breaches of student and employee conduct, and issue No Contact Orders and offer academic support, offer tutoring, reasonable accommodations including off-campus options and housing changes to continue one's education. Defendant BARD, in breach of its explicit agreements left Plaintiff JANE DOE without recourse or remedy.

176.     Defendant BARD not only failed to provide a safe environment for Plaintiff JANE DOE but also failed to properly train its staff members and senior faculty members as promised by its Student Handbook.

177.     As a direct and proximate result of Defendant BARD's breach of contract with Plaintiff JANE DOE, she suffered through the open hostility of classmates regarding her sexual assault and battery, denial of any protections afforded other similarly situated White students, including Defendant JOHN DOE. Further, Plaintiff JANE DOE's medical needs based on her disability, panic attacks and a suicide attempt as a result of the trauma from being raped and was

dismissed by Defendant BARD's senior faculty members when she notified them of what was occurring and was instead involuntarily placed on mandatory academic leave.

178.  As a direct, material, proximate and foreseeable result of Defendant BARD's actions and inactions giving rise to this breach of contract action, Plaintiff JANE DOE has suffered past and future pecuniary losses, including loss of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff JANE DOE demands damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post judgment interest and costs.

## COUNT XV
## DEFENDANT BARD'S VIOLATION OF NEW YORK HUMAN RIGHTS LAWS

179.  Plaintiff JANE DOE hereby incorporates paragraphs 1-46  as though fully set forth herein.

180.  Plaintiff JANE DOE  has been discriminated against by Defendants on the basis of her gender, race,  and disability in violation of the New York State Human Rights Law (New York Executive Law § 290, et seq)., in that Defendant BARD engaged in a course of conduct which included, but was not limited to, treating Plaintiff differently than similarly situated males.

181.  Defendant BARD's actions of protecting an abuser's education while subjecting Plaintiff DOE to a dangerous and threatening environment, constitutes disparate treatment toward Plaintiff DOE based upon her gender.

182.  Defendant BARD has engaged in unlawful practices in violation of the New York State Human Rights Law. Defendant unlawfully subjected Plaintiff to disparate treatment by going to

extreme measures to punish her and remove her from the school while not taking any punitive actions against male offenders who had been found to have actually caused the misconduct.

183.   The facts, as outlined above, establish that Plaintiff was unlawfully discriminated against in her pursuit of educational opportunities by Defendant BARD based on her gender, disability, and race in violation of the New York State Human Rights Law.

184.   As a further proximate result of Defendant BARD's actions, Plaintiff JANE DOE has suffered and continues to suffer severe and lasting embarrassment, humiliation, emotional distress, anguish, and other incidental and consequential damages and expenses.

185.   The conduct of Defendant BARD was done in conscious disregard of Plaintiff JANE DOE's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of punitive and compensatory damages in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff JANE DOE hereby demands a trial by Jury, pursuant to FRCP 38, as to all issues

so triable

Dated this 24th day of September, 2018.

Respectfully submitted,

/s/ Carrie Goldberg
Carrie A. Goldberg, Esq.
Adam Massey, Esq.
*C.A. Goldberg, PLLC*
16 Court Street, Suite 2500
Brooklyn, NY 11241
(646)666-8908
Carrie@cagoldberglaw.com
*Co-Counsel for Plaintiff Jane Doe*

/s/ Jasmine Rand
Jasmine Rand, Esq.
*Rand Law, L.L.C.*
2525 Ponce de Leon Blvd., Ste. 300
Miami, FL 33134
(706) 424-1027
jasminerand@gmail.com
*Co-Counsel for Plaintiff Jane Doe*
(Pro hac vice pending)

/s/ Lester L. Barclay
Lester L. Barclay, Esq.
*The Barclay Law Group, P.C.*
111 W. Washington St., Ste. 1520
Chicago, IL 60602
(312) 553-0123 (phone)
lbarclay@barclaylawgroup.com
*Co-Counsel for Plaintiff Jane Doe*
(Pro hac vice pending)